AMHERST COAL COMPANY

*v.*

M. H. HIX, CLERK OF THE CIRCUIT COURT OF KANAWHA COUNTY, BOARD OF REVIEW OF THE WEST VIRGINIA DEPARTMENT OF UNEMPLOYMENT COMPENSATION *et al.*

(No: 9656)

Submitted October 3, 1945. Decided November 6, 1945.

*Chas. L. Estep*, for petitioner.
*Leo Loeb*, for respondent.

KENNA, JUDGE:

This writ of certiorari addressed to the Clerk of the Circuit Court of Kanawha County was granted because of an order of that court which affirmed an order of March 30, 1944, of the Board of Review of the Department of Unemployment Compensation, the writ having been granted upon the petition of Amherst Coal Company, the order complained of having awarded unemployment compensation to Frank Marcum, an inside maintenance man at the company's No. 1 operation on Buffalo Creek in Logan County. This submission presents no material conflict concerning the facts, but involves the question of whether Marcum quit work on March 31, 1943, under circumstances that would disqualify him under Michie's Code, 1943, 21A-6-4 (1), from receiving benefits under the "Unemployment Compensation Law" due to the fact that he quit work "voluntarily without good cause involving fault on the part of the employer".

The facts shown by the record before us in substance are as follows: The claimant at the age of fifty-five had been employed by Amherst Coal Company for a period of ten years, as far as the record shows in the same capacity and working conditions in its Number 1 operation. During that time he had lived in one of the company houses located near his work. Prior to March 31, 1943, he had bought a farm of fourteen acres in Cabell County near Huntington, a distance of approximately sixty-five miles from his place of employment. On the last named date, according to the claimant's version, he informed the superintendent that his physical condition would no longer permit him to perform the duties of a maintenance man in a low-seam operation, which Amherst Number 1 Mine admittedly is, and that for that reason he desired to be transferred to the same company's Number 2 operation with higher coal and less dampness. According to Marcum, the superintendent unconditionally refused this request. The superintendent denies that Marcum at that time asked to be transferred

and states that claimant told him he was quitting in order to move to his Cabell County farm. Marcum did go to the Cabell County farm and on April 13, 1943, filed his claim for unemployment compensation and on April 20 the Director's Deputy approved it. This finding was appealed to one of the Director's Trial Examiners who on June 22 reversed the Deputy's finding. One month later the Board of Review set aside the order of the Trial Examiner and reinstated the Deputy's finding, following which the Circuit Court of Kanawha County granted a writ of certiorari. Prior to hearing in the Circuit Court it was found that the testimony before the Board of Review had not been taken down. On October 6, 1943, by consent the matter was recommitted to the Board of Review where evidence was again taken and transcribed, after which the Board repeated its former finding. The Circuit Court of Kanawha County again granted certiorari which was followed by an affirmance of the Board of Review on August 4, 1944. To review that order of the Circuit Court this Court granted a writ of certiorari.

The record shows that Marcum on October 5, 1943, returned to his old job in the same operation.

Dealing first with this controversy upon the theory advanced by the claimant, we do not believe that we can say as a matter of law that it involves "fault on the part of the employer" to fail to assign an employee on demand to better and more healthful working conditions and surroundings, it not appearing that the conditions with which the claimant is dissatisfied involve deceit or other misconduct on the part of the employer. If we were to so hold the "Unemployment Compensation Law" would likely then become a breeder of discontent in the event the fund remained solvent. Beyond question that has been the attitude of the courts of last resort before whom the same or similar questions have been presented. In *Miners* v. *Hix,* 123 W. Va. 637, 654, 17 S. E. (2d) 810, this Court quoted with approval the opinion of the Court of Appeals of Kentucky in *Barnes* v. *Hall,* 285 Ky. 160,

146 S. W. (2d) 929 as follows: "The purpose of Unemployment Compensation Act was to provide employment for unfortunate victims of a maladjusted economy who are unable to obtain suitable work at a living wage, not to enable those who are offered continuation of existing employment to refrain from work until they have secured additional advantages." We, therefore, believe that upon claimant's own theory he does not bring himself within either the express provisions or the clear spirit of our Unemployment Compensation Law.

When there is added to what has already been said the fact that Marcum bought a farm early in 1943, quit work in late March, immediately moved to his farm and planted a crop, and in October returned to the same job he had given up in March, it is difficult to conclude that he quit because of unwholesome working conditions in the exact position to which he voluntarily returned, even conceding that his working conditions involved fault on the part of his employer, which, as stated, we believe has not been shown. That deduction is so unavoidable from the facts shown by the record before us that it does not merit discussion.

For the reasons stated the order of the Circuit Court of Kanawha County and that of the Unemployment Compensation Board of Review are set aside and the case remanded to the Board with directions to impose the disqualifications as provided by Subsection 1, of Section 4, Article 6, Chapter 21A of the Code of West Virginia.

*Reversed and remanded.*