383 S.E.2d 84

**Marian F. FRAGMIN**

v.

**Cathy GATSON, Clerk; the Board of Review of the West Virginia Department of Employment Security; and F.W. Woolworth.**

**No. 18676.**

Supreme Court of Appeals of West Virginia.

July 13, 1989.

Mary A. Kenney, North Cent. W.Va. Legal Aid Soc., Morgantown, for Fragmin.

F.W. Woolworth Stores, Manassas, pro se.

Jack O. Friedman, Dept. of Employment Sec., Charleston, for Cathy Gatson, et al.

PER CURIAM:

This is an appeal by Marian Fragmin, an unemployment compensation claimant, from an order of the Circuit Court of Kanawha County. The circuit court, in effect, affirmed a ruling of the Board of Review of the Department of Employment Security holding that the claimant was disqualified from receiving unemployment benefits because she had voluntarily quit her employment. On appeal the claimant contends that the evidence does not support the conclusion that she voluntarily quit, and that the circuit court's decision was plainly wrong. After reviewing the record and the questions presented, this Court cannot conclude that the finding that the claimant was disqualified was plainly wrong and affirms the ruling of the circuit court.

The claimant worked as a clerk at an F.W. Woolworth store in Manassas, Virginia, from May 13, 1987, until July 7, 1987. Her job required her to lift and carry merchandise. In late June, 1987, she learned that she was pregnant. According to her brief, her physician indicated that she should refrain from engaging in heavy lifting. Without informing her employer of this restriction, the claimant quit her job on July 7, 1987.

On July 28, 1987, the claimant applied for unemployment compensation benefits. A deputy reviewed the application and, on July 31, 1987, ruled that the claimant had voluntarily quit. The claimant appealed the deputy's decision to the Department of Employment Security, which, in turn, submitted the matter to an administrative law judge. During the proceedings before the administrative law judge, the claimant testified that just prior to quitting her job she was informed that she was pregnant and should not be doing heavy lifting. She said her job entailed heavy lifting, and this fact, coupled with her physician's instruction, caused her to quit her work. In conjunction with her claim she submitted certain medical notes. One dated July 30, 1987, indicated that she was pregnant with an expected date of confinement of January 18, 1988. It did not indicate that she had any restrictions. Another note which was undated, and which was apparently submitted after the claimant suffered an unexpected miscarriage in early August, after she had quit her employment, indicated that she was able to work, but that she should avoid heavy lifting.

During the administrative proceedings in this case, Regina Avinger, who represented the employer, stated that the claimant had not advised F.W. Woolworth that heavy lifting was the cause of her quitting.

At the conclusion of the proceedings, the administrative law judge, on September 3, 1987, found that the claimant left work voluntarily without good cause involving fault on the part of the employer. For that reason he concluded that under *W.Va. Code*, 21A–6–3, she was initially disqualified from receiving unemployment compensation benefits. He specifically noted that the claimant had not informed the employer of her medical condition, had not complained to any person about the fact that she was forced to do lifting in her employment, and had never asked that she be transferred to another part of the store.

The claimant appealed the administrative law judge's decision to the Board of Review of the Department of Employment Security. The Board of Review, on November 9, 1987, affirmed the administrative law judge's decision. The claimant then appealed to the Circuit Court of Kanawha County, and the circuit court, by its order dated April 18, 1988, affirmed the disqualification. It is from the circuit court's ruling that the claimant now appeals.

In *W.Va. Code*, 21A–6–3, the Legislature has provided that:

[A]n individual shall be disqualified for [unemployment] benefits: (1) For the week in which he left his most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in

covered employment at least thirty working days.

In *Gibson v. Rutledge,* 171 W.Va. 164, 298 S.E.2d 137 (1982), this Court recognized that, in spite of this language, where an employee is temporarily disabled because of circumstances arising out of employment, he should not be deemed to have voluntarily quit, and he is not disqualified from receiving benefits. In *Gibson,* the claimant fell on an icy embankment in the course of his employment and sustained a serious back injury. The physician who treated him ordered him to refrain from working. After seven months, when he was authorized to return to work, the claimant's employer informed him that his position had been filed by a new employee. This Court ruled that:

> In accordance with the beneficent purposes of the Unemployment Compensation Act, we ... conclude that when an employee ceases work as a result of an injury or other health-related problem and later attempts to return to work after recovering from the health problem, only to find that his employment has been terminated during his absence, such employee has not "voluntarily" left his work within the meaning of W.Va.Code § 21A–6–3(1) [1978].

*Gibson v. Rutledge,* 171 W.Va. at 168, 298 S.E.2d at 141.

In the later case of *McDonald v. Rutledge,* 174 W.Va. 649, 328 S.E.2d 524 (1985), the Court ruled that a worker who received recurring blisters to his hands from the repetitive tightening of strings on a shoe mould in the course of his employment should not be denied unemployment compensation benefits. The Court stated that the claimant's physical disability presented a compelling circumstance for leaving work.

Recently, in *Lewis v. Gatson, Clerk,* 181 W.Va. 214, 382 S.E.2d 51 (1989), the Court noted that a common thread running through these cases is the fact that the employee's health condition was caused by or connected to his employment and that it had reached the degree of severity that would justify a reasonably prudent person in giving up employment. The Court stated that under such circumstances the employee could not be said to have voluntarily quit his employment. In syllabus point 4, the Court ruled that:

> If an employee's health condition is caused by or connected to employment and has reached the degree of severity that a reasonably prudent person would be justified in giving up employment, then the employee has not made a voluntary quit. This is the general rule elsewhere and applies to both physical and mental disabilities.

Ordinarily an uncomplicated pregnancy is not considered a condition which renders a claimant incapable of working, except in the period immediately preceding confinement, and it has been recognized that quitting work because of an uncomplicated pregnancy is a circumstance which renders a claimant disqualified from receiving benefits under a statute such as West Virginia's. As stated in 81 C.J.S. *Social Security* § 229, pp. 457–58 (1977):

> A married woman who quits work due to pregnancy is disqualified from receiving benefits under a statute disqualifying workers who voluntarily leave their work without good cause attributable to the employer, or connected with employment. The same result has been reached under a statute which disqualifies workers who have left their employment voluntarily without good cause, but which does not expressly require that the good cause be attributable to the employer or the employment.

*See Martin Mills, Inc. v. Department of Employment Security,* 391 So.2d 56 (La. App.1980); *General Telephone Company of Florida v. Board of Review,* 356 So.2d 1357 (Fla.App. 2d Dist.1978).

Pregnancy is clearly not a condition that ordinarily arises out of employment. This fact, and the authorities mentioned above, lead the Court to conclude that the mere fact that an employee has a simple pregnancy, uncomplicated by employment, is not a circumstance justifying quitting work and does not of itself constitute a health condition which avoids the disqualifi-

cation for voluntary quitting established by *W. Va. Code,* 21A–6–3.

 This does not mean that the Court believes that a pregnant woman should be precluded from collecting unemployment compensation benefits if work conditions so aggravate and complicate the pregnancy that a reasonably prudent person would give up employment. In fact, in line with *Lewis v. Gatson, supra,* if an employee can show that employment is so aggravating or complicating a pregnancy that a prudent person would give up employment, then a quit should not be considered a voluntary quit.

In the present case, while the claimant introduced medical evidence showing that she was pregnant at the time she quit and also showing that she was under a physician's care at that time, she introduced no medical evidence showing that her employment caused or aggravated her condition. While she testified that her physician told her not to engage in heavy lifting, it is not clear that heavy lifting was an essential part of her job. Her testimony indicated that she lifted several boxes at a time. A fair reading of the evidence suggests that she might have lifted one box at a time. Further, implicit in Ms. Avinger's testimony is the implication that the employer might have made some accommodation for the claimant if the claimant had given notice of a limitation.

It has been repeatedly recognized in this State that:

> "Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong...." Syl. pt. 1, *Kisamore v. Rutledge,* [166 W.Va. 675] 276 S.E.2d 821 (W.Va.1981)."

Syllabus, *Smith v. Cole,* 172 W.Va. 556, 309 S.E.2d 54 (1983); *see Federoff v. Rutledge,* 175 W.Va. 389, 332 S.E.2d 855 (1985); *Lough v. Cole,* 172 W.Va. 730, 310 S.E.2d 491 (1983).

In the present case the fact finder reasonably could have concluded that the claimant quit her employment because of her pregnancy rather than because of some aggravating cause associated with it. Under the circumstances, the Board of Review and the Circuit Court of Kanawha County were not plainly wrong in ruling that the claimant was disqualified from receiving benefits because she had voluntarily quit her job.

The judgment of the Circuit Court of Kanawha County is, therefore, affirmed.

Affirmed.