391 S.E.2d 364

**Brenda M. WOLFORD**

v.

**Cathy H. GATSON, Clerk; The Board of Review of the West Virginia Department of Employment Security, and Scottie's A.G. Store.**

No. 19252.

Supreme Court of Appeals
of West Virginia.

March 22, 1990.

Paul R. Sheridan, Appalachian Research and Defense Fund, Inc., Logan, for Brenda M. Wolford.

Jack O'Friedman, W.Va. Dept. of Employment Sec., Charleston, for W.Va. Dept. of Employment Sec., et al.

Anne Wandling, Avis, Whitten & Wandling, Logan, for Scottie's A.G. Store.

PER CURIAM:

This is an appeal, by way of certiorari,[1] by Brenda M. Wolford from a final order of the Circuit Court of Kanawha County, entered June 5, 1989, holding Ms. Wolford disqualified from receiving unemployment compensation benefits on the ground that she quit work voluntarily without good cause involving fault on the part of the employer. *W.Va.Code*, 21A-6-3(1) [1988]. For the reasons that follow, we reverse and remand with directions.

The Circuit Court of Kanawha County, by final order dated June 5, 1989, affirmed the decision of the Board of Review of the West Virginia Department of Employment

---

1. *W.Va.Code,* 21A-7-27 [1970] provides that in unemployment compensation cases, an appeal from a decision of the Circuit Court of Kanawha County may be taken to this Court by petition for a writ of certiorari.

Security (hereinafter, Board of Review) holding that although ordinarily a 25% reduction in scheduled hours of employment would constitute good cause for termination of employment, the claimant, Ms. Wolford, was denied benefits because she failed to make a good faith effort to give her employer an opportunity to adjust the situation. In the administrative proceedings below, the claimant was denied benefits by a deputy commissioner whose decision was affirmed by an administrative law judge, the Board of Review and the circuit court.

The facts as found by the administrative law judge and adopted by both the Board of Review and the circuit court, indicate that Ms. Wolford was employed by Scottie's A.G. Store in Monaville, West Virginia from September 15, 1982 until June 11, 1988. She was hired as a stock clerk and worked about forty hours per week and was paid $3.35 per hour.[2] In December 1987 Ms. Wolford began on-the-job training as a butcher and her pay was $4.00 per hour. In February 1988, the owner hired his son as the primary butcher. Thereafter Ms. Wolford's hours were reduced to about thirty-one hours per week and her job duties were changed to include more stock work and cleaning the owner's home about once a week. Ms. Wolford had previously cleaned the owner's home but now she was paid for cleaning through her regular paycheck. In April 1988, Ms. Wolford cut her hand at work and when she returned to work she was not assigned to the meat department. In May 1988, Ms. Wolford asked the store manager, Karen Spence, about returning to the butcher position and her reduced hours because she "could not make it on 30 hours a week." Ms. Spence told her to talk to the owner because he took care of scheduling. After taking her vacation, Ms. Wolford quit her job on June 11, 1988. Ms. Wolford did not discuss her reasons for leaving at the time she actually quit.

### I

*W.Va.Code*, 21A–6–3 [1988] states that an individual is disqualified for benefits:

(1) For the week in which he left his most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least thirty working days.

We defined good cause in the Syllabus, *Brewster v. Rutledge*, 176 W.Va. 265, 342 S.E.2d 232 (1986), to include substantial unilateral changes in the terms of employment:

"[S]ubstantial unilateral changes in the terms of employment furnish 'good cause involving fault on the part of the employer' which justify employee termination of employment and preclude disqualification from the receipt of unemployment compensation benefits." Syllabus Point 2, in part, *Murray v. Rutledge*, [174] W.Va. [423], 327 S.E.2d 403 (1985).

In *Brewster*, the claimant's hourly rate of pay was unilaterally reduced from $3.35 per hour to $2.25 per hour and his job duties were changed to include janitorial work. Mr. Brewster told his employer he would not agree to perform the additional janitorial work and quit. We concluded that these substantial unilateral changes constituted good cause. In *Murray*, 174 W.Va. at 423, 327 S.E.2d at 403, we held that changing a claimant's job duties from managerial to include food preparation and customer service constituted good cause. Ms. Murray attempted to seek a compromise several days before she left her employment but her employers sought to avoid the issue. In *Murray*, 174 W.Va. at 428, 327 S.E.2d at 408, we also noted that changes in work hours and rate of compen-

2. The Board of Review and the circuit court found that Ms. Wolford's customary hours were between thirty to forty hours per week. However, the record indicates that Ms. Wolford's hours averaged close to forty per week until shortly before she quit and the 25% reduction in hours was acknowledged by both fact finders. Ms. Wolford's vacation pay was based on her average hours and during her employment, except for her last vacation pay of thirty-one hours, she received forty hours of vacation pay.

sation could constitute good cause for termination.

■ The terms of Ms. Wolford's employment were unilaterally changed when her hours were cut approximately 25% and her regular duties were changed to include cleaning the owner's home as part of her regular employment.[3] These changes were substantial enough to constitute good cause involving fault of the employer's part to justify Ms. Wolford's termination of employment.

## II

The circuit court acknowledged that generally a 25% reduction in hours worked would constitute good cause. However, the circuit court imposed a duty on the claimant to speak to her employer regarding her situation before quitting. The circuit court held that *W. Va. Code,* 21A–6–3(1) [1988] implied, "at the very least, a 'good faith' effort on the part of an employee to speak with his or her employer regarding the reason or reasons he or she is being 'forced' to leave work." The circuit court further held that Ms. Wolford made no good faith effort to inform her employer and disqualified her from benefits.

In certain cases we have noted that employee notification to the employer of the situation could have resulted in accommodation. In *Denney v. Rutledge,* 174 W.Va. 820, 329 S.E.2d 893 (1985), we found that given the customary nature of her employment, the mere fact that the claimant heard aides screaming at patients did not justify leaving her job without telling her employer her reasons. In Syllabus Point 1, *Murray v. Rutledge,* 174 W.Va. 423, 327 S.E.2d 403 (1985), we stated that:

"Customary working conditions not involving deceit or other wrongful conduct on the part of the employer are not a sufficient reason for an employee to leave his most recent work voluntarily...." Syl., *Amherst Coal Co. v. Hix,* 128 W.Va. 119, 35 S.E.2d 733 (1945).

**3.** We note that the store shift from butchering to stock work can reasonably be considered within

We also noted in *Denney, Id.* 174 W.Va. at 822, 329 S.E.2d at 895, that the hospital had a procedure for reporting and correcting any irregularities or abuse that occurred.

In *Fragmin v. Gatson,* 181 W.Va. 452, 383 S.E.2d 84 (1989) (Upheld disqualification from compensation because the evidence showed the claimant, who was pregnant, voluntarily quit her job without good cause), we noted that if Ms. Fragmin had informed the employer of her restrictions on heavy lifting, some accommodation might have been made. The employers in *Murray* and *Fragmin* were unaware of the situations that caused the claimants to leave their employment and neither claimant informed his or her employer. In both cases, notice by the claimant might have resulted in an adjustment.

■ These cases are factually distinct from the present case because the employer was aware of Ms. Wolford's changed working conditions and reduced hours. The store owner hired his son as the new butcher, scheduled employee work hours, and changed Ms. Wolford's work assignment to include cleaning his house. The changes in Ms. Wolford's employment did not require special notice to the employer because these changes were not customarily present as in *Denney* nor within the exclusive knowledge of the employee as in *Fragmin.* In addition, Ms. Wolford informed Ms. Spence, the store manager, that the reduction in her work hours was causing a financial hardship.

## III

It has been repeatedly recognized in this State that:

" 'Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong....' Syl. pt. 1, *Kisamore v. Rutledge,* [166 W.Va. 675] 276 S.E.2d 821 (W.Va.1981)." Syllabus, *Smith v. Cole,* [172] W.Va. [556], 309 S.E.2d 54 (1983).

the scope of her employment.

In the present case the Board of Review and the circuit court correctly concluded that the 25% reduction in wages constituted good cause for terminating employment, but were plainly wrong in requiring Ms. Wolford to give notice to the employer that the substantial unilateral changes. in the terms of her employment were unacceptable. Therefore, Ms. Wolford's termination of employment in response to substantial unilateral changes in her employment constituted good cause for leaving her employment under *W.Va.Code*, 21A–6–3(1) [1988] and she should not have been disqualified from receiving unemployment compensation benefits.

For the above stated reasons, we reverse the judgment of the Circuit Court of Kanawha County that affirmed the final order of the Board of Review, and we remand the case to the Commissioner of the Department of Employment Security with instructions to enter an order awarding the appellant the unemployment compensation benefits to which she is entitled.

Reversed and remanded with instructions.