483 S.E.2d 550

**PRIVATE INDUSTRY COUNCIL OF KANAWHA COUNTY, Petitioner Below, Petitioner,**

v.

**Cathy S. GATSON, Clerk of the Circuit Court of Kanawha County, Andrew N. Richardson, Commissioner, Bureau of Employment Programs, The Board of Review and Shelly Huffman, Respondents Below, Respondents.**

No. 23572.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 1997.

Decided Feb. 20, 1997.

Karen H. Miller, Todd A. Mount, Charleston, for Petitioner.

Jack W. DeBolt, Charleston, for Shelly Huffman.

PER CURIAM:

This is an unemployment compensation case that is before this Court upon a writ of certiorari from a final order of the Circuit Court of Kanawha County, entered on February 26, 1996. *See* W.Va.Code § 21A–7–27 (1970). The petitioner, Private Industry Council of Kanawha County, challenges a determination by the circuit court that the respondent, Shelly Huffman, is not disqualified from receiving unemployment compensation benefits.[1] Petitioner contends on appeal that it was error for the circuit court to find that the respondent voluntarily left her employment with good cause involving fault on the part of the petitioner. We agree and reverse.

## I.

### FACTUAL BACKGROUND

The respondent was employed by the petitioner from October 1, 1983 to February 28, 1993. The respondent's job position, at the time she terminated her employment, was that of executive director. The respondent

---

1. Cathy S. Gatson, Clerk of the Circuit Court of Kanawha County, Andrew N. Richardson, Commissioner of the Bureau of Employment Programs, and the Board of Review of the West Virginia Division of Employment Security are nominally named as respondents. *See* W.Va. Code § 21A–7–20 (1936) (wherein it is required that the Board of Review "be made a party to every judicial action which involves its decisions.").

held the position of executive director from May 22, 1986, to the date she left her employment. The record indicates that the petitioner provided the respondent with the use of a vehicle for business and personal matters throughout most of her tenure as executive director.[2] On August 1, 1992, the petitioner informed the respondent that she could no longer use the vehicle for personal matters. The record indicates that the petitioner made the decision to terminate respondent's personal use of the vehicle after being informed by its insurance carrier that coverage was not provided for personal use by the respondent.

On February 28, 1993, the respondent quit her employment with the petitioner because of the new policy restricting her use of the vehicle for business purposes only.[3] Subsequent to resigning her position with the petitioner, respondent filed for unemployment compensation benefits. The Commissioner of the Bureau of Employment Programs, by decision dated January 29, 1993, found the respondent was eligible for benefits and was not disqualified from receiving benefits, because she "left work voluntarily with good cause involving fault on the part of the employer." The petitioner appealed the decision awarding unemployment benefits to the administrative law judge (ALJ). By order dated July 14, 1993, the ALJ reversed the Commissioner's decision after finding the respondent was "eligible for benefits but disqualified indefinitely as she left work voluntarily without good cause involving fault on the part of the employer."

The respondent thereafter appealed the decision of the ALJ to the Board of Review. By order dated December 2, 1993, the Board of Review reversed the decision of the ALJ after concluding: "Claimant is eligible for benefits and not disqualified. Claimant left work voluntarily with good cause involving fault on the part of the employer." The petitioner thereafter sought review of the Board of Review's decision before the circuit court. By order entered February 26, 1996, the circuit court affirmed the decision of the Board of Review. This petition for certiorari followed. We now reverse.

## II.

### STANDARD OF REVIEW

■ Our standard of review of a decision from the Board of Review is set out in syllabus point 1 of *Raleigh County Bd. of Educ. v. Gatson*, 196 W.Va. 137, 468 S.E.2d 923 (1996):

> " 'The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is de novo.' Syl. pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994)."

*See also* Syllabus, *Belt v. Rutledge*, 175 W.Va. 28, 330 S.E.2d 837 (1985); Syllabus, *Oyler v. Cole*, 171 W.Va. 402, 299 S.E.2d 13 (1982); Syl. pt. 1, *Kisamore v. Rutledge*, 166 W.Va. 675, 276 S.E.2d 821 (1981).[4] We pointed out in the single syllabus of *Mercer County Bd. of Educ. v. Gatson*, 186 W.Va. 251, 412 S.E.2d 249 (1991) that " '[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof.' Syllabus point 6, *Davis v. Hix*, 140 W.Va. 398, 84 S.E.2d 404 (1954)." To this end our decisions have been constant that "unemployment compensation statutes should be liberally construed in favor of the claimant[.]" *Davenport v. Gatson*, 192 W.Va.

---

**2.** The respondent did not own a vehicle. She was permitted to use the petitioner's vehicle, a 1992 Lumina, as a personal car when she was not at work. The record indicates the respondent was·allowed to take the car home.

**3.** The respondent actually resigned on January 8, 1993. However, the record indicates she was kept on the petitioner's payroll until February 28, 1993.

**4.** W.Va.Code § 21A–7–21 (1943) reinforces our standard of review, at it provides:

> In a judicial proceeding to review a decision of the board, the findings of fact of the board shall have like weight to that accorded to the findings of fact of a trial chancellor or judge in equity procedure.

117, 119, 451 S.E.2d 57, 59 (1994). *See also, Courtney v. Rutledge*, 177 W.Va. 232, 351 S.E.2d 419 (1986); *London v. Board of Review of Dept. of Employment*, 161 W.Va. 575, 244 S.E.2d 331 (1978). However, "[t]his 'liberality' rule is not to be utilized when its application would require us to ignore the plain language of the statute." *Adkins*, 192 W.Va. at 565, 453 S.E.2d at 399. (Citation omitted).

■ This Court has recognized that West Virginia's statutory eligibility and disqualification provisions concerning the receipt of unemployment compensation benefits constitute a two-step process. *Hill v. Board of Review*, 166 W.Va. 648, 276 S.E.2d 805 (1981). The first step involves determining whether an individual is eligible to receive such benefits, and the second step is to consider whether the individual is disqualified. *Lough v. Cole*, 172 W.Va. 730, 310 S.E.2d 491 (1983). In the instant case the respondent has been determined to be eligible to receive unemployment compensation benefits at every level of the proceedings, and the petitioner does not contest that determination. Therefore, the sole issue before this Court concerns disqualification of the respondent under W.Va.Code § 21A–6–3(1) (1990), which provides:

Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits:

(1) For the week in which he *left his most recent work voluntarily without good cause involving fault on the part of the employer* and until the individual returns to covered employment and has been employed in covered employment at least thirty working days. (Emphasis added).

### III.

### DISCUSSION

■ The Board of Review's determination that the respondent was not disqualified from receiving benefits was grounded on the following factual findings: (1) the petitioner discontinued personal use of the car by the respondent; (2) the value of the car to the respondent was $492.00 per month; and (3) a disagreement between the petitioner and respondent regarding her duties. Based upon these factual findings the Board of Review reached the legal conclusion "that a substantial unilateral change in the terms and conditions of" respondent's employment occurred, which "constitute[d] good cause involving fault on the part of the employer for an individual to quit her employment." A review of cases in which this Court has identified a substantial unilateral change in the terms and conditions of employment are helpful to properly analyze this case. In syllabus point 1 of *Wolford v. Gatson*, 182 W.Va. 674, 391 S.E.2d 364 (1990) we held:

" ' '[S]ubstantial unilateral changes in the terms of employment furnish 'good cause involving fault on the part of the employer' which justify employee termination of employment and preclude disqualification from the receipt of unemployment compensation benefits.' Syllabus Point 2, in part, *Murray v. Rutledge*, [174] W.Va. [423], 327 S.E.2d 403 (1985).' Syllabus, *Brewster v. Rutledge*, 176 W.Va. 265, 342 S.E.2d 232 (1986)."

In *Wolford* the claimant's terms of employment were unilaterally changed when her hours were cut approximately 25% and her regular duties were changed to include cleaning the employer's home as part of her regular employment. We found these changes were substantial enough to constitute good cause involving fault of the employer.

In *Brewster* the claimant's hourly rate of pay was unilaterally reduced from $3.35 per hour to $2.25 per hour and his job duties were changed to include janitorial work. The claimant told his employer he would not agree to perform the additional janitorial work and quit. We concluded that these substantial unilateral changes constituted good cause.

In *Murray* we held that changing a claimant's job duties from managerial to include food preparation and customer service was substantial enough to constitute good cause. In *Murray* we also noted that changes in work hours and rate of compensation could constitute good cause for termination. With the principle of *Wolford* and its progeny in view, we will proceed to first examine the

factual findings of the Board of Review, and then its legal conclusion.

■ The petitioner does not deny terminating the respondent's use of the vehicle for personal matters. The petitioner contends, however, that it was acting within its rights to terminate personal use of the car by the respondent. Several of the petitioner's board members testified at a hearing held by the ALJ, that their insurance carrier advised them that they were directly subject to and liable for, any damage or injury caused by the vehicle during use for nonbusiness purposes. The petitioner further argues that it continued to permit the respondent to use the vehicle for any business purpose. We do not find the petitioner's decision to restrict the use of its vehicle to be arbitrary, retaliatory or unlawfully discriminatory.

■ The issue of value of the vehicle to the respondent has two aspects, only one of which was explicitly addressed by the Board of Review. First, the respondent contends that when she was appointed to the position of executive director she was informed that part of her compensation included complete use of the vehicle, i.e., she was allowed to keep it at her residence as a personal car when she was not at work.[5] However, the petitioner's board president testified that the car was never part of the respondent's compensation package. Although the board president denied that the vehicle was part of respondent's compensation package, he did confirm that the petitioner had considered paying the respondent money to compensate her for not being able to use the car for personal reasons. The Board of Review did not specifically address the issue of the vehicle being part of the respondent's compensation package. However, this disputed fact was implicitly determined to be true by the Board of Review when it found that the vehicle had a value of $492.00 per month to the respondent. We do not believe that respondent carried her burden of establishing that the car was part of her compensation package. The respondent produced nothing

in writing, nor corroborating testimony to show that the car was part of her compensation package. Mere assertions by the respondent are insufficient to sustain this allegation.

As to the second aspect of the issue pertaining to the car, the petitioner argues that the Board of Review was clearly wrong in finding that the vehicle had a gross value of $492.00 per month[6] to the respondent. The record reveals that the respondent testified that the petitioner's executive committee informed her that the vehicle had a value of $492.00 per month to her. The respondent also testified that, for income tax purposes, in past years she claimed the value of the vehicle to her at $2,300; $1,800; $1,300; $1,200; and $900.00. The petitioner contends that the appropriate value to the respondent was the last year she claimed the car for income tax purposes—$900, which comes to $75 per month.

Our review of the record reveals that respondent's own testimony indicates that the value of the personal use of the automobile was $75.00 per month. She also testified that she used the $492.00 figure to calculate the $75.00 per month figure. Therefore, the Board of Review was clearly wrong in finding that the vehicle had a value to the respondent of $492.00 per month.

The last finding made by the Board of Review was that the petitioner and respondent had a disagreement about her job duties. A review of the respondent's testimony at the hearing before the ALJ reveals two incidents that may be described as disagreements about job duties. One issue involved suspension of the assistant director by the respondent. The petitioner initially questioned the authority of the respondent to take such action without consulting its board of directors. Respondent's actions were followed nonetheless. The second incident concerned awarding an auditing contract to a firm. Concerns were expressed over this matter as respondent was friends with someone in the firm that was given the contract.

---

5. At the point of the respondent's resignation she was being paid a yearly salary of $43,650.

6. The claimant testified that the value of the *total* use of the vehicle, for both business *and* personal use was $492.00 per month.

However, the record indicates that all of the respondent's decisions were upheld.[7]

The final issue for this Court is whether the legal conclusion, "substantial unilateral change in terms of employment," recognized in *Wolford, Brewster* and *Murray* embrace the factual findings of the Board of Review in the instant proceeding. We have little problem in concluding that the circumstances of this case evidenced some employment change for the respondent, i.e., restricted use of the vehicle. However, we are not willing to extend *Wolford* and its progeny to the factual setting of this case. Unlike the claimants in *Wolford, Brewster* and *Murray*, respondent's job duties were not altered and her salary was not reduced. Her personal use of the company car was justifiably terminated due to a concern over potential liability if an accident should occur. In spite of this minor change, respondent continued in the employment of petitioner for an additional nine months after the car was restricted to only business use. We said in syllabus point 1 of *Curry v. Gatson*, 180 W.Va. 272, 376 S.E.2d 166, (1988) that " '[c]ustomary working conditions not involving deceit or other wrongful conduct on the part of the employer are not a sufficient reason for an employee to leave his most recent work.' Syllabus, *Amherst Coal Co. v. Hix*, 128 W.Va. 119, 35 S.E.2d 733 (1945)."

The Board of Review was clearly wrong in concluding that a substantial change occurred in the terms of respondent's employment. Since this clearly erroneous finding formed the sole basis for the Board of Review's modification of the ALJ's ruling, we reverse the Board's decision. The respondent is disqualified for benefits because she voluntarily left work without good cause involving fault on the part of the petitioner. As we noted in *Philyaw v. Gatson*, 195 W.Va. 474, 479, 466 S.E.2d 133, 138 (1995), " 'a voluntary quit is defined as encompassing 'the free exercise of the will.' ' " *Quoting, Rhodes v. Rutledge*, 174 W.Va. 486, 488, 327 S.E.2d 466, 468 (1985); *State v. Hix*, 132 W.Va. 516, 522, 54 S.E.2d 198, 201 (1949).

The respondent exercised free will in leaving her employment.

Accordingly, the final order of the Circuit Court of Kanawha County is reversed, and this case is remanded to the Board of Review for the entry of an order disqualifying the respondent from receiving unemployment compensation benefits.

Reversed.

---

7. The respondent's brief addresses statements she made during the hearing. Respondent alleged that certain board members encouraged her to do illegal things. The Board of Review did not directly or indirectly credit the accusations. Our review of the allegations and responses thereto by board members convinces us that there is little to no merit to the statements.