488 S.E.2d 456

Janice GLASS, Petitioner
Below, Petitioner,

v.

Cathy S. GATSON, Clerk of the Circuit Court of Kanawha County; James G. Dillon, as Chairman of Board of Review; West Virginia Bureau of Employment Programs; Andrew N. Richardson, as Commissioner of West Virginia Bureau of Employment Programs; and One Valley Bank, N.A., Respondents Below, Respondents.

No. 23855.

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1997.

Decided May 30, 1997.

Dissenting Opinion of Chief Justice Workman July 17, 1997.

**182**

Henry R. Glass, III, Lovett, Cooper & Glass, Charleston, for Petitioner.

Cheryl H. Wolfe, Erin Elizabeth Magee, Jackson & Kelly, Charleston, for Respondent One Valley Bank, N.A.

PER CURIAM:

This unemployment security appeal concerns the denial of benefits to Janice Glass based on a finding that she voluntarily quit her job without fault on the part of One Valley Bank, N.A., her employer.[1] On appeal Mrs. Glass maintains that One Valley Bank, N.A. ("One Valley") made a substantial unilateral change in her employment by requiring her, in addition to her regular duties as an escrow clerk, to perform one-third of the duties previously assigned to a full-time mail clerk. One Valley maintains that because the additional mail clerk duties took only six (6) hours per week, there was no substantial change in the terms of Mrs. Glass's employment. When the record is viewed in light of the remedial nature of unemployment compensation statutes, we find that Mrs. Glass did not quit her work "voluntarily without good cause involving fault on the part of the employer" within the

meaning of *W.Va.Code,* 21A–6–3(1) [1990], and therefore, we reverse the decision of the circuit court.

## I.

### *Facts and Background*

In March 1989, Mrs. Glass began working as an escrow agent with Atlantic Financial Mortgage Servicing ("Atlantic"). Mrs. Glass' work included "[t]aking care of insurance policies, helping customers with any problems they had, monitoring losses, [and] paying bills." Because of financial difficulties Atlantic went into receivership and Atlantic's parent was acquired by One Valley in October 1991. Mrs. Glass continued working and on March 20, 1992, she was formally hired by One Valley as a starting level escrow agent. Although the parties disagree about the extent of the increased work load, they do agree that One Valley increased Mrs. Glass' workload.

During the Fall of 1993, One Valley installed a new computer system to be used by the escrow agents. Although the new computer system was designed to increase efficiency, Mrs. Glass maintains that she neither notice nor experienced any time saving from the new system and that she begin lagging behind in her duties as an escrow agent. Mrs. Glass alleges that her job caused her to have migraine headaches and stress.

On May 6, 1994, the mail clerk for the escrow department where Mrs. Glass worked died of a heart attack.[2] The mail clerk's position was full-time, and the duties included opening mail, marking numbers, using the new computer system and distributing the mail. Upon the death of the mail clerk, her duties were divided among the three escrow agents, one of whom was Mrs. Glass. The escrow agents' regular duties were not de-

---

1. This appeal comes to this Court on a writ of certiorari. *W. Va.Code,* 21A–7–27 [1970] states:

   The appeal from the decision of the circuit of Kanawha county may be taken to the supreme court of appeals if a proper petition for certiorari is filed within sixty days of the date of the final decision of the circuit court of Kanawha county. The cases shall go from the circuit

   court of Kanawha county only on writ of certiorari and need be heard only at the session of the supreme court.

2. Although Mrs. Glass' brief indicates that the mail clerk died on May 1, 1994, the transcript of the hearing before the administrative law judge indicates that May 6, 1994 was the date of death.

creased; there was no increase in pay, no authorization for overtime and no training.

According to Mrs. Glass, she performed a small amount of the mail clerk's duties, but mainly focused on her escrow agent duties. After being told that One Valley did not plan to hire someone as a mail clerk and that the additional duties would be permanently assigned to the escrow agents, Mrs. Glass resigned on May 12, 1994, effective May 25, 1994. Mrs. Glass' letter of resignation did not explain why she resigned.

According to One Valley, Mrs. Glass was not aware at the time of her resignation of its decision not to replace the mail clerk. In addition, One Valley argues that essentially the escrow clerks were requested to open and sort mail, most of which was intended for the escrow department. Almost immediately, One Valley undertook measures to reduce the time necessary to sort the mail to a total of five to six hours a week. One Valley maintains that because Mrs. Glass never informed the bank of her problems or concerns, it never had the opportunity to make adjustments.

After Mrs. Glass resigned, she filed for unemployment benefits and was initially denied. Mrs. Glass appealed the deputy's disqualification decision. After a hearing, the administrative law judge found that the changes in Mrs. Glass' job duties were "not substantial such as to justify the claimant quitting her job for the purposes of unemployment compensation." However, the administrative law judge said that Mrs. Glass "may have been justified to quit her job." After the Board of Review and the Circuit Court of Kanawha County adopted and affirmed the administrative law judge's decision, Mrs. Glass appealed to this Court.

On appeal, Mrs. Glass maintains that the addition of one-third of the mail clerk's duties to her regular job was a substantial unilateral change in her employment, and therefore, she had good cause involving fault of the part of One Valley to quit.

## II.

### *Discussion*

■ Our standard of review for a decision of the Board of Review was stated in Syllabus Point 3, *Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994).

The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo.*

*In accord* Syllabus Point 3, *Smittle v. Gatson,* 195 W.Va. 416, 465 S.E.2d 873 (1995). *See Philyaw v. Gatson,* 195 W.Va. 474, 476, 466 S.E.2d 133, 135 (1995); *W.Va.Code* 21A–7–21 [1943].

■ In this case, we apply a *de novo* review to the Board of Review's legal conclusion that the claimant quit her work "voluntarily without good cause involving fault on the part of the employer" within the meaning of *W.Va.Code,* 21A–6–3(1) [1990].

■ Based on the record, we conclude that the evidence does not support the Board of Review's legal determination that the claimant is disqualified from receiving unemployment benefits. The circumstances of the present case are similar to *Murray v. Rutledge,* 174 W.Va. 423, 327 S.E.2d 403 (1985) and its progeny. In *Murray,* the claimant who was employed as a full-time manager was required, in addition to her managerial duties, to work in the kitchen without an increase in compensation. *Murray* concluded that the additional kitchen work was a substantial unilateral change entitling the claimant to unemployment compensation benefits. Syllabus Point 2, in part of *Murray* states:

[S]ubstantial unilateral changes in the terms of employment furnish "good cause involving fault on the part of the employer" which justify employee termination of employment and preclude disqualification from the receipt of unemployment compensation benefits.

Substantial unilateral changes were also found in *Brewster v. Rutledge,* 176 W.Va. 265, 342 S.E.2d 232 (1986)(*per curiam*)(addi-

tion of janitorial duties for a night watchman with a decrease in pay was a substantial change); *Hunt v. Rutledge,* 177 W.Va. 523, 354 S.E.2d 619 (1987)(*per curiam*)(change from nursing home orderly to nursing assistant without any training was a substantial change); *Wolford v. Gatson,* 182 W.Va. 674, 391 S.E.2d 364 (1990)(*per curiam*)(25% cut in working hours and change in working conditions was a substantial change). *See also Private Industry Council of Kanawha County v. Gatson,* 199 W.Va. 204, 483 S.E.2d 550 (1997)(refusing to extend *Murray* and holding that an employer's restricting use of company car to business was not a substantial change in terms of employment). In *Wolford, supra,* we noted that when the employer is aware of the changed working conditions, the employee is not required to give special notice to the employer.

In this case, the record shows that Mrs. Glass's duties were substantially increased by the addition of one-third of the full-time mail clerk's duties. One Valley did not need notice from Mrs. Glass of her increased work load because the situation was known to the bank when it decided not to replace the full-time mail clerk. One Valley maintains that the increased duties were not substantial because after a period of time, the bank changed the mail procedures to require only six (6) hours a week. Although the bank's accommodations may have resulted in decreasing the additional workload at a later date, that was not the situation facing Mrs. Glass.

■ We have traditionally recognized that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." Syllabus Point 6, *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954). *In accord* Syllabus Point 2, *Smittle v. Gatson, supra;* Syllabus, *Mercer County Bd. of Educ. v. Gatson,* 186 W.Va. 251, 412 S.E.2d 249 (1991). Given the totality of the circumstances, we conclude as a

matter of law that the claimant did not quit her work "voluntarily without good cause involving fault on the part of the employer" within the meaning of *W.Va.Code,* 21A–6–3(1) [1990].

Accordingly, we reverse the judgment of the Circuit Court of Kanawha County affirming the final order of the Board of Review, and we remand this case to the Commissioner of the Department of Employment Security with instructions to enter an order awarding the claimant unemployment compensation benefits as provided for by law.

Reversed and remanded, with directions.

WORKMAN, Chief Justice, dissenting:

I must respectfully dissent from the majority's decision on the grounds that its conclusion that One Valley was at fault within the meaning of West Virginia Code § 21A–6–3 (1996) in temporarily[1] requiring Ms. Glass as its employee to take on one-third of the duties of a deceased co-worker is preposterous. When the facts of this case are examined, the ridiculousness of the result reached is immediately apparent. The mail clerk died on Friday, May 6, 1994. For the next four working days, Ms. Glass, in addition to her own duties as an escrow clerk, was assigned one-third of the mail clerk's responsibilities. Yet, as the majority acknowledges, by her own testimony Ms. Glass "performed a small amount of the mail clerk's duties, but mainly focused on her escrow agent duties." On that fourth working day, Ms. Glass submitted her resignation without giving her employer any notice regarding her complaint or the opportunity to resolve the situation.

The majority wrongly relies on an earlier decision of this Court in *Wolford v. Gatson,* 182 W.Va. 674, 391 S.E.2d 364 (1990), to conclude that Ms. Glass had no obligation to inform her employer of her dissatisfaction with having to perform a portion of the mail clerk's duties for the purpose of permitting One Valley an opportunity to accommodate

1. Although the decision was ultimately reached by One Valley not to fill the position of the deceased coworker, because that decision had not been made at the time Ms. Glass submitted her resignation, the Bank's action in requesting her to assume additional duties prior to her resignation would have to be viewed as merely temporary in any analytical framework. (Ms. Glass' own testimony indicated that she was not aware at the time of her resignation that One Valley did not intend to replace the mail clerk position.)

her needs/concerns. While this Court distinguished the claimant's case in *Wolford* from those where the employers "were unaware of the situations that caused the claimants to leave their employment[,]" the concern at issue was undeniably whether "notice by the claimant might have resulted in adjustment." *Id.* at 676, 391 S.E.2d at 366. While we noted that the employer in *Wolford* was aware of the changed circumstances—a twenty-five percent reduction in hours—we further observed that the claimant in that case had "informed ... the store manager[ ] that the reduction in her work hours was causing a financial hardship." *Id.* Thus, *Wolford* does not stand for the proposition that the claimant does not have an obligation to inform the employer of her reason for being "forced" to leave work whenever the change in working conditions emanates from the employer—certainly this is almost always the case. When read, even cursorily, the import of the analysis in *Wolford* was to present employers with an opportunity to accommodate the dissatisfied employee prior to resignation. Because Ms. Glass never gave One Valley the benefit of her concerns, the Bank never had the opportunity to make any adjustments. I wholeheartedly concur with the circuit court's observation in *Wolford* that West Virginia Code 21A–6–3(1) implies " 'at the very least, a "good faith" effort on the part of the employee to speak with his or her employer regarding the reason or reasons he or she is being "forced" to leave work.' " 182 W.Va. at 676, 391 S.E.2d at 366.

In addition, the majority's conclusion that the additional mail clerk's duties, which amounted to only five or six hours a week of additional responsibilities, amounted to a "substantial unilateral change[ ] in the terms of [Ms. Glass'] employment" has me (almost) speechless. *See* Syl. Pt. 2, *Murray v. Rutledge*, 174 W.Va. 423, 327 S.E.2d 403 (1985). Assuming Ms. Glass worked a forty-hour work week, these additional duties took up, at most, fifteen percent of her work week. That doesn't even come close to qualifying as "substantial." If court personnel were justified in resigning every time we added to their duties, we would certainly have a huge turnover here. The Board of Review and the circuit court correctly applied the facts of

this case to the law in concluding that the job changes instituted by One Valley were "not substantial such as to justify the claimant quitting her job for the purposes of unemployment compensation." The bottom line is that the correct decision was reached below and the majority has set a dangerous precedent that will leave employers with little or no room for requiring additional responsibilities to be assumed by their employees in situations similar to what occurred in this case. Further, it actually suggests that employees who feel a change has been made in their duties may unilaterally resign without ever giving their employers a right to address the issue.