546 S.E.2d 267

William F. VIEWEG, Commissioner, Bureau of Employment Programs, Unemployment Compensation Division, Appellant,

v.

Cathy S. GATSON, Clerk of the Circuit Court of Kanawha County; Janet E. James, Chairman, and Harold E. Starr and Susan W. Hastings, Members, the Board of Review of the West Virginia Department of Employment Security; the Mercer, McDowell, Wyoming Mental Health, and Jerry K. Bailey, D/B/A Bailey's Auto Repair, Employers; and Katie M. Baker, Timothy A. Gray and Scott E. Furrow, Employees, Appellees

No. 27257.

Supreme Court of Appeals of West Virginia.

Submitted May 2, 2000.

Decided June 12, 2000.

Mary Blaine McLaughlin, Esq., Bureau of Employment of Programs, Charleston, West Virginia, Attorney for Appellant.

Ricklin Brown, Esq., Mark H. Dellinger, Esq., Bowles Rice McDavid Graff & Love PLLC, Charleston, West Virginia, Attorney for Appellee, Mercer, McDowell, Wyoming Mental Health.

Donald L. Darling, Senior Deputy Attorney General, Charleston, West Virginia, Attorney for Appellee, Board of Review of the West Virginia Department of Employment Security.

Mr. Jerry K. Bailey, Beckley, West Virginia, Appellee, Pro se.

SCOTT, Justice:

The Appellant, William F. Vieweg, Commissioner of the West Virginia Bureau of Employment Programs, Unemployment Compensation Division ("Commissioner"), seeks reversal of a final order of the Circuit Court of Kanawha County, entered September 15, 1999, affirming decisions of the Board of Review of the West Virginia Department of Employment Security ("Board of Review"). The Board of Review ruled that three individual claimants, who tendered notice of prospective resignation to their employers but were fired before their respective notice periods lapsed, were disqualified for unemployment compensation benefits after the designated effective dates of their resig-

nations. After examining West Virginia Code § 21A–6–3(1) (1996), the controlling statutory provision, we conclude that the claimants were not disqualified as determined below and accordingly, reverse the judgment of the circuit court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The essential facts are undisputed. Timothy A. Gray and Katie M. Baker were formerly employed as residential aides by Mercer, McDowell, Wyoming Mental Health ("MMW Mental Health"), a nonprofit organization that provides services to disabled and mentally ill adults. On August 2, 1998, Gray submitted to MMW Mental Health a written, thirty-day notice of his intended resignation, effective September 1, 1998. On August 7, 1998, MMW Mental Health informed Gray that his services were no longer needed and he was terminated effective immediately.[1]

Gray filed a claim for unemployment compensation benefits with the Department of Employment Security ("DES"), and on October 6, 1998, a DES deputy commissioner ruled that Gray was eligible for said benefits, finding that "[a]lthough the claimant had given notice of resignation, the employer severed the relationship by terminating him prior to the effective date of the resignation." MMW Mental Health appealed the deputy's decision, and on October 29, 1998, a de novo hearing was held before an Administrative Law Judge ("ALJ"). By decision issued November 5, 1998, the ALJ modified the deputy's decision by limiting the grant of benefits to the time period between Gray's discharge and his designated resignation date. Specifically, the ALJ ruled that Gray was "not disqualified from August 6, 1998, through August 31, 1998" but was "disqualified from September 1, 1998, to indefinite, as he voluntarily quit his job without good cause involving fault on the part of the employer." The Commissioner appealed the ALJ's decision to the Board of Review, and on December 1, 1998, the Commissioner's attorney argued the appeal before the Board of Review. On

---

1. MMW Mental Health claims that it fired Gray and Baker as part of a necessary reduction in staff so that it would not be forced to lay off

other employees who desired continued employment.

December 17, 1998, the Board of Review affirmed the ALJ's decision, with only a minor adjustment of the beginning date of disqualification to September 2, 1998.

On September 1, 1998, claimant Baker submitted to MMW Mental Health a written, two-week notice of her intended resignation, to be effective on September 15, 1998. On September 5, 1998, MMW Mental Health informed Baker that it no longer needed her services. She was not paid for the remainder of the notice period.

After being discharged by MMW Mental Health, Baker filed a claim for unemployment compensation benefits with DES. On September 22, 1998, a DES deputy commissioner issued a decision granting Baker benefits on the grounds that "[a]lthough the claimant had given notice of resignation, the employer severed the relationship by terminating her prior to the effective date of the resignation." MMW Mental Health appealed the deputy's decision, and on October 8, 1998, a de novo hearing was held before an ALJ. In a decision issued on October 14, 1998, the ALJ modified the deputy's decision by ruling that Baker was "not disqualified from September 5, 1998, through September 15, 1998," the period from her discharge to the date when her resignation was to become effective, but was "disqualified from September 15, 1998, to indefinite, as she voluntarily quit her job without good cause involving fault on the part of the employer." The Commissioner appealed the ALJ's decision to the Board of Review. Following oral argument before the Board of Review on November 17, 1998, the Board, on November 19, 1998, affirmed the ALJ's decision.

The third claimant, Scott E. Furrow, worked as a mechanic for Jerry K. Bailey, d/b/a Bailey's Auto Repair ("Bailey"), from January 5, 1998, to August 24, 1998. On August 24, 1998, Furrow gave notice of his resignation to Bailey, to be effective on August 28, 1998. On the same day that Furrow submitted his notice, he was discharged by Bailey, allegedly because of unsatisfactory job performance. Furrow was not paid wages for the notice period.

Thereafter, Furrow filed a claim for unemployment compensation benefits with DES.

On September 8, 1998, a DES deputy commissioner ruled him eligible, finding that "[a]lthough the claimant had given notice of resignation, the employer severed the relationship by terminating him prior to the effective date of the resignation." Bailey appealed, and on October 5, 1998, following a de novo hearing, an ALJ modified the deputy's decision, finding that Furrow was not disqualified for benefits from the date of his discharge, August 24, 1998, until the designated effective date of his resignation, August 28, 1998, but was "disqualified from benefits from August 29, 1998, to indefinite, as he voluntarily quit work without good cause involving fault on the part of the employer." The Commissioner appealed from the ALJ's decision to the Board of Review, and on November 25, 1998, the Board affirmed the ALJ's decision with respect to the dates of Furrow's disqualification.

After receiving adverse rulings from the Board of Review in the Gray, Baker, and Furrow claims, the Commissioner appealed from the Board's decision in each matter to the Circuit Court of Kanawha County. The appeals were consolidated, and in a final order entered September 15, 1999, the circuit court affirmed the decisions of the Board of Review, holding:

> By voluntarily resigning, the employees rendered themselves disqualified from receiving unemployment compensation from the effective date of their separation from employment until once again employed for the statutorily required period. If the Court were to adopt the commissioner's position, it would be a fortuitous circumstance for an employer to terminate the employee in the interim, resulting in a windfall [to the employee].

## II. STANDARD OF REVIEW

■ The standard utilized by this Court for reviewing decisions of the Board of Review was enunciated in syllabus point three of *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994):

> The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to

substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

Whether the claimants are disqualified for benefits after the designated effective dates of their resignations, pursuant to West Virginia Code § 21A–6–3(1), is a question of statutory interpretation. Thus, our review is plenary.

## III. DISCUSSION

This Court has previously recognized that "West Virginia's statutory eligibility and disqualification provisions concerning the receipt of unemployment compensation benefits constitute a two-step process. The first step involves determining whether an individual is eligible to receive such benefits, and the second step is to consider whether the individual is disqualified." *Private Indus. Council v. Gatson*, 199 W.Va. 204, 207, 483 S.E.2d 550, 553 (1997) (citation omitted).

■ Here, there is no dispute regarding the claimants' eligibility. The question we are asked to resolve concerns only disqualification under West Virginia Code § 21A–6–3(1). That statutory provision states:

Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits:

(1) For the week in which he left his most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least thirty working days.

W. Va.Code § 21A–6–3(1). The precise issue presented by this appeal is whether, under West Virginia Code § 21A–6–3(1), an individual who is fired by his employer after submitting notice of his prospective resignation, but prior to expiration of the notice period, is disqualified for unemployment compensation benefits after the designated effective date of his resignation.

The Commissioner contends that the claimants are not disqualified for benefits

after the designated effective dates of their resignations. According to the Commissioner, the impetus that causes a claimant immediately to leave his employment is the determinative factor under West Virginia Code § 21A–6–3(1), which focuses on the week in which the claimant *actually* left work. Since the claimants were discharged before their designated resignation dates, there was never a week in which any of the claimants left work voluntarily so as to require disqualification for benefits under West Virginia Code § 21A–6–3(1). In each case, the claimant left work because of immediate termination without just cause. We agree with the Commissioner and reject the arguments of the Board of Review and MMW Mental Health to the effect that, notwithstanding a firing during the notice period which causes an employee's immediate departure from his job, the employee is disqualified for benefits after the specified effective date of his resignation.

■ "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). West Virginia Code § 21A–6–3(1) unequivocally links the timing of disqualification for benefits to the period immediately following "the week in which ... [the employee] left his most recent work voluntarily without good cause involving fault on the part of the employer." Were we to adopt the interpretation urged by the Board of Review and MMW Mental Health, the timing language of West Virginia Code § 21A–6–3(1) would be stripped of its meaning. Finding West Virginia Code § 21A–6–3(1) to be clear, unambiguous, and a plain expression of legislative intent, we give it full force and effect as written. When discharge by an employer is the event which in fact causes an employee to leave his work, preventing the employee's voluntary quit from reaching fruition, there is no "week in which ... [the employee] left his most recent work *voluntarily*" and consequently, no statutory disqualification. W. Va.Code § 21A–6–3(1) (emphasis added). Accordingly, we hold that under West Virginia Code § 21A–6–3(1) (1996), an individual who is discharged with-

out cause by his employer after giving notice of his prospective resignation, but before expiration of the notice period, is not disqualified for unemployment compensation benefits after the date on which his resignation would have become effective but for the discharge.

Although this issue is one of first impression for this Court, we note that courts of other states have applied similar disqualification provisions in the same way as we have West Virginia Code § 21A–6–3(1). For example, in *Dillard Department Stores, Inc. v. Polinsky*, 247 Neb. 821, 530 N.W.2d 637 (1995), the Supreme Court of Nebraska examined whether an employee was disqualified for unemployment compensation benefits under Nebraska's corollary to West Virginia Code § 21A–6–3(1)[2] where the employee gave notice to her employer and was terminated during the notice period. Under the plain language of the Nebraska statute, the *Dillard* Court concluded that the employee was not disqualified for benefits. In analyzing the Nebraska statute, the court stated:

> the statutory language of § 48–628(a)(1) ... links the timing of disqualification from benefits to the period immediately following "the week in which [the employee] left work voluntarily without good cause." The Commissioner notes and the record shows that Polinsky left work on October 2, 1992, and did not return. Due to the termination of Polinsky's employment by Dillard on October 2, there never ensued a week in which she left work voluntarily, such as to require disqualification from benefits under § 48–628(a)(1).

530 N.W.2d at 642–43; *accord West Jordan v. Morrison*, 656 P.2d 445, 447 (Utah 1982) (reasoning, under Utah's corollary to West

Virginia Code § 21A–6–3(1), that "the language of the statute is unambiguous: the week in which the claimant actually leaves work is the determinative factor regarding subsequent eligibility"); *see also Coleman v. Mississippi Employment Sec. Comm'n*, 662 So.2d 626, 628 (Miss.1995) (applying comparable Mississippi statute and holding that "[a]n employee who is terminated without pay after indicating his intent to resign may be considered discharged and eligible for state unemployment benefits").

In the instant case, it is uncontroverted that the immediate and actual cause of each claimant's departure from his or her job was a discharge by the employer. The claimants' prior submission of notice of resignation is irrelevant under West Virginia Code § 21A–6–3(1) since the claimants actually left their jobs not by their own volition but because they were fired.

## IV. CONCLUSION

Based upon the foregoing, the final order of the Circuit Court of Kanawha County denying the claimants unemployment compensation benefits is reversed, and the case is remanded to the Board of Review for the entry of an order in accordance with this opinion, as required by West Virginia Code § 21A–7–28 (1996).

Reversed and remanded.

---

**2.** Nebraska Revised Statutes § 48–628(a)(1) (Cum.Supp.1992) provides:

> An individual shall be disqualified for benefits:
> (a)(1) For the week in which he or she has left work voluntarily without good cause, if so

found by the Commissioner of Labor, and for not less than seven weeks nor more than ten weeks which immediately follow such week, as determined by the commissioner according to the circumstances in each case ....