376 S.E.2d 166

**Arlene D. CURRY**

v.

**Cathy S. GATSON, Clerk; Board of Review of the West Virginia Department of Employment Security, et al.; and Genpak Corp.**

No. 18543.

Supreme Court of Appeals
of West Virginia.

Dec. 21, 1988.

Timothy F. Cogan O'Brien, Cassidy & Gallagher, Wheeling, for appellant.

Frank Cuomo, Jr., Wellsburg, for Genpak Corp.

Jack O. Friedman, Dept. of Employment Sec., Charleston, for appellee.

MILLER, Justice:

This is an appeal by the claimant, Arlene Curry, from an order of the Circuit Court of Kanawha County that affirmed a decision of the West Virginia Department of Employment Security holding that she was disqualified from receiving unemployment compensation benefits because she had voluntarily terminated her employment.[1] We find that the claimant was forced to leave her employment because of the discriminatory work atmosphere; therefore, we reverse the circuit court's ruling.

## I.

The claimant was employed at Genpak Corporation, Inc., from July 16, 1968, until April 22, 1985. In 1981, the claimant was transferred into the shipping department where she worked as a fork lift operator. Ms. Curry was the only black person working in the shipping department. In this department, Ms. Curry was subjected to both sexual and racial harassment. Upset by the hostile work environment, Ms. Curry filed a discrimination claim in January, 1983, with the City of Wheeling Human Rights Commission (HRC). She also discussed her concerns with her immediate supervisor, Alphonse Marchetti, and the plant manager, Ken Alessi.

Apparently, her internal efforts to resolve the problem were unavailing, because Ms. Curry filed a second complaint with the HRC in November, 1984. Ms. Curry and a female co-worker, Misty Skaggs, complained that their supervisor, Mr. Marchetti, was more abusive toward women than men. Ms. Skaggs was of the opinion that Mr. Marchetti did not like to have female workers in his department. His attitude was reflected in the type of assignments he gave to the claimant. Ms. Curry testified that she was required to sweep more frequently than the other employees and was an errand girl, but only rarely drove a fork lift. Finally, despite Ms. Curry's complaint about some employees hanging a feminine napkin from her fork lift, neither Mr. Marchetti nor upper management made any effort to ascertain whether this allegation was true.

Nor were women the only targets of abuse. There is undisputed evidence that Mr. Marchetti not only condoned racial jokes in the workplace, but that he often told these jokes himself. There is evidence that Mr. Marchetti referred to black people as "niggers" and that he failed to reprimand a subordinate when he used the word "nigger" in Ms. Curry's presence. On another occasion, Mr. Marchetti told an employee that Ms. Curry had "better get her black ass moving."

The immediate cause of Ms. Curry's complaint to the HRC was her transfer in October, 1984, from the 7:00 a.m. to 3:00 p.m. shift to the 3:00 p.m. to 11:00 p.m. shift. In an effort to settle the matter internally, the field investigator for the HRC, Naomi Turner, arranged to meet with Ms. Curry and the plant manager Ken Alessi. At the unemployment compensation hearing, Ms. Turner testified that during this meeting the plant manager was unreceptive to Ms. Curry's concerns about Mr. Marchetti. Indeed, she testified that Mr. Alessi was hostile toward the two women. Mr. Alessi's

---

**1.** Ms. Curry was disqualified from receiving benefits pursuant to W.Va.Code, 21A–6–3(1), which provides:

"Upon a determination of the facts by the Commissioner, an individual shall be disqualified for benefits: (1) For the week in which he left his most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least thirty working days."

attitude was that there was very little Genpak could do about Mr. Marchetti's behavior.

The hostile work environment, the unreceptive attitude of management, and the shift change caused Ms. Curry to become, in her own words, a "bundle of nerves." Her physician prescribed tranqualizers to help calm her down. When the medication proved ineffective, Ms. Curry's physician recommended that she take a leave of absence. Ms. Curry took two thirty-day leaves between November, 1984, and April, 1985. Finally, on April 22, 1985, Ms. Curry terminated her employment.

Ms. Curry then filed for unemployment compensation benefits. The administrative law judge ruled that although she was otherwise eligible for compensation, she was disqualified by W.Va.Code, 21A–6–3(1).[2] This ruling was affirmed by the Board of Review of the Department of Employment Security and the Circuit Court of Kanawha County. The claimant appeals.

## II.

This appeal presents two issues: (1) whether voluntary termination of employment by an employee on the basis of sexual and racial harassment constitutes "good cause" attributable to the employer under W.Va.Code, 21A–6–3(1), and (2) whether the evidence in this case establishes harassment.

Initially, we must determine whether sexual or racial harassment is "good cause" for voluntary termination of employment within the meaning of W.Va. Code, 21A–6–3(1). The term "good cause" is not defined in our unemployment insurance statute. It has been defined generally as follows in 81 C.J.S., *Social Security and Public Welfare* § 226 at 449–50 (1977):

"[S]uch a cause as justifies an employee voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed."

A somewhat similar test has been utilized by this Court in the single Syllabus of *Amherst Coal Co. v. Hix*, 128 W.Va. 119, 35 S.E.2d 733 (1945):

"Customary working conditions not involving deceit or other wrongful conduct on the part of the employer are not a sufficient reason for an employee to leave his most recent work."

We have not had occasion to consider the "good cause" provision as it relates to a discrimination charge. We have in a number of cases recognized that an employee has shown "good cause" reasons for leaving employment. *E.g., Ross v. Rutledge*, 175 W.Va. 701, 338 S.E.2d 178 (1985) (transportation hardship by virtue of employer's moving factory out of state); *Murray v. Rutledge*, 174 W.Va. 423, 327 S.E.2d 403 (1985) (employer misrepresentation as to terms and conditions of work).

However, other jurisdictions have interpreted similar provisions in the discrimination context. For example, in *McGinnis v. Moreau*, 149 So.2d 188, 190 (La.App.1963), the Louisiana appellate court held that: "[M]ere dissatisfaction with working conditions does not constitute 'good cause' for quitting the employment, unless the dissatisfaction is based upon discriminatory or unfair or arbitrary treatment...." Similarly, the Supreme Court of Minnesota has found that voluntary termination of employment by an employee on the basis of racial discrimination constitutes good cause attributable to the employer for purposes of qualifying for unemployment benefits. *Marz v. Department of Employment Serv.*, 256 N.W.2d 287 (Minn.1977).

The Pennsylvania court has stated: "[T]here is no question that racial discrimination may be a cause of a necessitous and compelling nature for terminating one's employment." *Watts v. Commonwealth Unemployment Compensation Bd. of Review*, 49 Pa.Commw. 279, 282, 410 A.2d 976, 978 (1980); *accord Tastee Freez Cafe-*

---

**2.** For the text of W.Va.Code, 21A–6–3(1), *see*     note 1, *supra.*

*teria v. Watson,* 64 N.C.App. 562, 307 S.E.2d 800 (1983); *Doering v. Board of Review,* 203 N.J.Super. 241, 496 A.2d 720 (1985); *Fajardo v. Morgan,* 15 Or.App. 454, 516 P.2d 495 (1973); *Taylor v. Unemployment Compensation Bd. of Review,* 474 Pa. 351, 378 A.2d 829 (1977); *Hussa v. Employment Security Dept.,* 34 Wash. App. 857, 664 P.2d 1286 (1983).

These cases demonstrate that racial discrimination may constitute "good cause" for voluntarily terminating one's employment. Thus, if an employee is sexually or racially harassed at the workplace and this discriminatory treatment would cause a reasonably prudent person to resign, such employee is not disqualified from receiving unemployment compensation benefits upon resignation under W.Va.Code, 21A–6–3(1).

### III.

Having determined that discrimination can constitute "good cause" under W.Va. Code, 21A–6–3(1), we next address whether a reasonably prudent person would have felt discriminated against by Genpak and, as a result, terminated the employment. In essence, the claimant contends that the work environment was so hostile that she was forced to resign.

In the instant case, the conclusion reached by the administrative law judge was inconsistent with his findings of fact. Although he found that racial jokes and slurs were used at the workplace, he concluded that this discriminatory work environment did not constitute "good cause" under 21A–6–3(1).[3] We believe that any reasonable reading of the record as reflected by the facts set out in Part I demonstrates that Ms. Curry was subjected to racial discrimination and that this was the motivating reason for terminating her employment. While we traditionally give deference to the findings of fact of the agency, we are not required to do so where they are clearly wrong, as indicated by Syllabus

Point 2 of *Perfin v. Cole,* 174 W.Va. 417, 327 S.E.2d 396 (1985):

" 'Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong; however, the plainly wrong doctrine does not apply to conclusions of law by the Board of Review.' Syl. pt. 1, *Kisamore v. Rutledge,* [166 W.Va. 675] 276 S.E.2d 821 (W.Va.1981)."

We agree with the claimant and find that she acted as any other reasonably prudent person would have in similar circumstances. Because we believe discrimination is good cause to leave one's employment under W.Va.Code, 21A–6–3(1), and because we believe that Ms. Curry was discriminated against, we reverse the circuit court's disqualification ruling and remand this case to the Board of Review of the Department of Employment Security for entry of an appropriate order.

REVERSED AND REMANDED.

---

**3.** The HRC ordered Genpak to pay Ms. Curry $1,000 for incidental damages to compensate her for humiliation, embarrassment, loss of dignity, and emotional distress suffered by her as a result of Genpak's supervisory personnel using racially derogatory language. This decision was affirmed by the Circuit Court of Kanawha County.