IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

No. 11-1425

**FILED**

**February 27, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

VERIZON SERVICES CORPORATION,
Petitioner

v.

LORETTA K. EPLING,
Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Paul Zakaib, Jr., Judge
Civil Action No. 10-AA-134

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: January 23, 2013
Filed: February 27, 2013

Mark H. Dellinger                          Sarah K. Brown
Bowles Rice McDavid Graff & Love, LLP      Mountain State Justice, Inc.
Charleston, West Virginia                  Charleston, West Virginia
Attorney for Petitioner                    Attorney for the Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1. "The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*." Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994).

2. "Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong; however, the plainly wrong doctrine does not apply to conclusions of law by the Board of Review." Syl. Pt. 1, *Kisamore v. Rutledge*, 166 W.Va. 675, 276 S.E.2d 821 (1981).

3. "The word voluntarily as used in W.Va. Code, 21A–6–3(1) means the free exercise of the will." Syl. Pt. 3, *Childress v. Muzzle*, 222 W.Va. 129, 663 S.E.2d 583 (2008).

4. "The term 'good cause' as used in W.Va. Code, 21A–6–3(1) means cause involving fault on the part of the employer sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed." Syl. Pt. 4, *Childress v. Muzzle*, 222 W.Va. 129, 663 S.E.2d 583 (2008).

i

5. "'Unemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof.' Syllabus Point 6, *Davis v. Hix*, 140 W.Va. 398, 84 S.E.2d 404 (1954)." Syl. Pt. 2, *Childress v. Muzzle*, 222 W.Va. 129, 663 S.E.2d 583 (2008).

6. "Misrepresentations concerning the terms of employment or substantial unilateral changes in the terms of employment furnish 'good cause involving fault on the part of the employer' which justify employee termination of employment and preclude disqualification from the receipt of unemployment compensation benefits." Syl. Pt. 2, *Murray v. Rutledge*, 174 W.Va. 423, 327 S.E.2d 403 (1985).

Per Curiam:

This is an appeal by Verizon Services Corporation (hereinafter "Verizon") from a September 19, 2011, order of the Circuit Court of Kanawha County reversing the Board of Review of Workforce West Virginia (hereinafter "Board of Review") and finding that the respondent, former Verizon employee Mrs. Loretta K. Epling (hereinafter "Mrs. Epling"), is entitled to unemployment compensation benefits. Verizon appeals the decision of the circuit court, contending that the circumstances of Mrs. Epling's departure from employment with Verizon do not satisfy the statutory standard for an award of unemployment compensation benefits. Upon thorough review of the briefs, arguments, record, and applicable precedent, this Court reverses the decision of the circuit court and remands this matter with directions to reinstate the decision of the Board of Review finding Mrs. Epling ineligible for unemployment compensation benefits.

I. Factual and Procedural History

Mrs. Epling was hired by Verizon on June 2, 2008, as a business consultant. At the time of her initial employment, Mrs. Epling chose to work within the business office because that position permitted her to work a day shift and pick up her children from daycare by 6:00 p.m. each evening. Prior to beginning her employment with Verizon, Mrs. Epling was provided with two documents. A document entitled "Job Offer Confirmation" informed her that her "work schedule" would be determined by her "supervisor based on the needs of the business." The document further provided that "[t]his may include evenings, nights, weekends, overtime, and overnight stays when required." A second document, entitled

1

"Statement of Understanding," informed Mrs. Epling that she "may be scheduled to work any days/hours from Monday through Friday, and may be required to work occasional weekend and Holidays as needed." This document also explained that "[t]ours of duty are **currently** scheduled between the hours of 8:00 a.m. and 6:00 p.m." and informed Mrs. Epling as follows: "You also understand that tours of duty are *subject to change at any time* based on the needs of the business, and that they are scheduled based on seniority." Furthermore, Verizon and the Communication Workers of America (hereinafter "Union"), of which Mrs. Epling was a member, had also negotiated a collective bargaining agreement providing that employment hours and schedules could be altered by Verizon to meet business requirements.

In March 2010, Verizon determined that re-assignment of employees to different shifts was necessitated by the fact that Verizon was being purchased by another company. Consequently, Mrs. Epling was notified that her hours of employment would be changed to 12:00 - 8:00 p.m. three days per week and 1:00 - 9:00 p.m. two days per week, beginning March 15, 2010. She would also be entitled to receive a pay increase. In response, Mrs. Epling expressed concerns regarding her childcare issues[1] and offered to work part-time during the day shift or take another position on day shift. Verizon alleges that it

_____

[1] Mrs. Epling's husband was unable to assist in picking up the children from the childcare facility due to his own work schedule. Further, Mrs. Epling indicated that she searched for alternative daycare options in her community and was unable to locate any childcare.

2

was unable to grant Mrs. Epling's requests because it could not displace more senior employees to accommodate Mrs. Epling's needs.

On March 15, 2010, Mrs. Epling resigned from her employment with Verizon. She thereafter filed for unemployment compensation benefits on March 21, 2010. A Workforce West Virginia deputy, by order dated April 1, 2010, found Mrs. Epling eligible for unemployment compensation benefits. On May 13, 2010, an administrative hearing[2] was held on Mrs. Epling's request for unemployment compensation benefits. By order dated June 1, 2010, the administrative law judge upheld the eligibility finding, holding that Mrs. Epling had left work voluntarily and had sustained her burden of proving that she had left employment for good cause involving fault on the part of the employer. Specifically, the order of the administrative law judge held as follows:

> The claimant left work voluntarily. March 15, 2010, the employer was changing the claimant's shift assignment from dayshift to evening shift. The change in shift assignment was significant to the claimant, considering the claimant's daycare responsibilities and concerns. The daycare for the claimant's children closed at 6 pm. The claimant was unable to accept the evening shift assignment, considering the claimant's daycare responsibilities and situation with her children. Consequently, the change in shift assignments is a material unilateral change in the terms or conditions of employment, which constitute good cause for the claimant to leave work. Therefore, it is held that the claimant left work voluntarily with good cause involving fault on the part of the employer. The claimant is not

---

[2]Mrs. Epling testified at the May 13, 2010, hearing. Mrs. Epling's supervisor, Ms. Christina Elswick, testified on behalf of Verizon.

disqualified.

By order dated July 23, 2010, the Board of Review reversed the administrative law judge's decision without additional hearing. The Board found that Mrs. Epling was ineligible for unemployment compensation benefits, reasoning that although Mrs. Epling left work voluntarily due to a change in her working hours, the departure was not for good cause involving fault on the part of the employer. Specifically, the Board found that the element of fault on the part of the employer did not exist. The Board emphasized that Mrs. Epling's Union had negotiated a collective bargaining agreement authorizing Verizon to alter employees' shifts and hours based upon business needs. The Board noted that a shift differential, providing additional compensation, would be paid to evening shift employees, and that Verizon was acting within the terms of the collective bargaining agreement. Morever, the Board held that the change in Mrs. Epling's working hours "was not a unilateral change as the contract was negotiated by both the union and the employer." The Board therefore concluded that Mrs. Epling had "failed to show good cause involving fault on the part of the employer. . . ."

Upon appeal by Mrs. Epling, the Circuit Court of Kanawha County reversed the Board and found, by order dated September 19, 2011, that Mrs. Epling was eligible for benefits. The circuit court concluded that Mrs. Epling had terminated her employment for good cause involving fault on the part of Verizon. The circuit court reasoned that although

4

the collective bargaining agreement permitted Verizon to alter Mrs. Epling's hours, the relevant issue was "whether the change in her hours constituted fault on the part of the employer causing Ms. Epling to leave her job with good cause." Finding that the children's needs constituted good cause, the circuit court concluded that Verizon had initiated a substantial and unilateral alteration in work hours and that the "fault" of Verizon consisted of its "insistence on changing Ms. Epling's work hours and refusal to work within Ms. Epling's request for a work schedule that she could complete without jeopardizing the care of her children." Based upon the circuit court's analysis, it ruled that Mrs. Epling should not be disqualified from receiving unemployment compensation benefits.

On October 13, 2011, Verizon appealed to this Court. Verizon contends that the circuit court erred by making the following findings: (1) Mrs. Epling left her employment for good cause involving the "fault" of Verizon; (2) Verizon made a substantial unilateral change to the terms of employment; and (3) particular prior opinions of this Court are determinitive of the issue of Mrs. Epling's eligibility for unemployment compensation benefits.

## II. Standard of Review

This Court has previously held that "[t]he findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question

5

on review is purely one of law, no deference is given and the standard of judicial review by the court is *de novo* " Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994);[3] *see also* Syl. Pt 1, *Kisamore v. Rutledge*, 166 W.Va. 675, 276 S.E.2d 821 (1981) ("Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong; however, the plainly wrong doctrine does not apply to conclusions of law by the Board of Review.").

This Court has also acknowledged that the "legal conclusion that [an employee] quit her job 'voluntarily without good cause involving fault on the part of the employer' within the meaning of West Virginia Code § 21A–6–3(1) [2005] is subject to a *de novo* standard of review." *May v. Chair and Members, Bd. of Review*, 222 W.Va. 373, 376, 664 S.E.2d 714, 718 (2008). With those standards of review as guidance, this Court proceeds to an evaluation of the matter currently on appeal.

### III. Discussion

#### A. West Virginia Code § 21A-6-3(1) (2008)

The statutory standard for a determination of entitlement to unemployment

---

[3]Prior to 2007, Workforce West Virginia was known as the Bureau of Employment Programs. *See* W.Va. Code § 21A-l-4 (2009).

compensation benefits is enunciated in West Virginia Code § 21A-6-3(1). Pursuant to that statute, an employee is disqualified from receiving unemployment compensation benefits if she left work "voluntarily without good cause involving fault on the part of the employer . . . ." In syllabus point three of *Childress v. Muzzle,* 222 W.Va. 129, 663 S.E.2d 583 (2008), this Court defined "voluntarily" as follows: "The word voluntarily as used in W.Va. Code, 21A–6–3(1) means the free exercise of the will." In syllabus point four of *Childress*, this Court stated: "The term 'good cause' as used in W.Va. Code, 21A–6–3(1) means cause involving fault on the part of the employer sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed."

### B. "Good Cause Involving Fault on the Part of the Employer"

Verizon contends that the circuit court erred in finding that Mrs. Epling left her employment for good cause involving fault on the part of Verizon. Specifically, Verizon asserts that its actions were consistent with the written terms of employment communicated to Mrs. Epling prior to employment, as well as the parameters of her employment which were the product of negotiations between Verizon and the Union within the context of the collective bargaining agreement. Verizon further explains that it was unable to accommodate Mrs. Epling's request for transfer to a part-time or day shift position because such transfer would have displaced more senior workers, thus violating rights regarding seniority. Consequently, Verizon maintains that no fault on the part of the employer exists in this case.

7

Mrs. Epling responds by asserting that the unemployment compensation statutes should be liberally construed and that the circuit court's ruling was correct. As this Court has explained, "'[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof.' Syllabus Point 6, *Davis v. Hix*, 140 W.Va. 398, 84 S.E.2d 404 (1954)." Syl. Pt. 2, *Childress,* 222 W.Va. at 130, 663 S.E.2d at 584. Mrs. Epling maintains that the alteration in required working hours, combined with her particular childcare circumstances, constituted fault on Verizon's part.

This Court has addressed an employee's entitlement to unemployment compensation benefits based upon alterations in conditions of employment on multiple occasions, and an evaluation of such prior cases is appropriate in the analysis of the case presently before this Court. In *Murray v. Rutledge*, 174 W.Va. 423, 327 S.E.2d 403 (1985), for instance, this Court encountered a situation in which the employee's responsibilities had been substantially increased with no concomitant increase in compensation. The employee had been employed as a restaurant manager and was subsequently required to work in the kitchen in addition to her managerial duties. In examining the application of West Virginia Code § 21A-6-3(1) to that factual scenario, this Court explained that such a substantial unilateral change constituted "good cause involving fault on the part of the employer." 174 W.Va. at 426, 327 S.E.2d at 405. In syllabus point two of *Murray*, this Court enunciated its holding as follows: "Misrepresentations concerning the terms of employment or substantial

8

unilateral changes in the terms of employment furnish 'good cause involving fault on the part of the employer' which justify employee termination of employment and preclude disqualification from the receipt of unemployment compensation benefits."

Similarly, in *Ross v. Rutledge*, 175 W.Va. 701, 338 S.E.2d 178 (1985), this Court concluded that an employee's family obligations prevented job relocation from Huntington, West Virginia, to Cannonsburg, Kentucky, as sought by the employer. Additional compensation to address the longer commute was not offered, and this Court ultimately found that the employee had voluntarily left employment due to good cause involving fault on the part of the employer. Unemployment compensation benefits were therefore granted.

The effect of substantial alterations in employment duties upon eligibility for unemployment compensation benefits was also addressed in *Hunt v. Rutledge*, 177 W.Va. 523, 354 S.E.2d 619 (1987). In *Hunt*, this Court found eligibility for benefits where an employee, originally hired as an orderly, was subsequently asked to perform nursing assistant duties, and the employer had offered neither additional compensation nor training. *Id.* at 524, 354 S.E.2d at 620; *see also Glass v. Gatson*, 200 W.Va. 181, 488 S.E.2d 456 (1997) (finding substantial unilateral change where duties were increased by the addition of one-third of the mail clerk's duties)*; Wolford v. Gatson*, 182 W.Va. 674, 391 S.E.2d 364 (1990) (finding substantial alteration where change in employment hours resulted in 25% reduction in

9

compensation and increase in duties); *Brewster v. Rutledge*, 176 W.Va. 265, 342 S.E.2d 232 (1986) (finding substantial alteration where employer added janitorial duties for night watchman with decrease in compensation).

The factual circumstances constituting good cause involving fault on the part of the employer were also assessed in *May. See* 222 W.Va. at 376, 664 S.E.2d at 718. In that case, a substantial unilateral change in terms of employment was found where the employee, Ms. May, terminated her service as a maid subsequent to a dramatic increase in workload and employment expectations, without an accompanying increase in compensation. This Court found that such a factual scenario did constitute "good cause involving fault on the part of the employer." *Id.* Although Ms. May had originally been assigned the duties of cleaning a home and performing personal household tasks, she was subsequently asked to perform other duties, including the task of cleaning a two-cabin business complex and a coach bus. In finding eligibility for benefits, this Court explained: "Based upon a review of the uncontroverted evidence in the record, we find that the Appellant did indeed encounter various substantial unilateral quantitative changes in the terms of her employment." *Id.* at 378, 664 S.E.2d at 719. The Court therefore concluded as follows:

> Accordingly, given the totality of the specific circumstances before us, we conclude as a matter of law that these quantitative changes were substantial enough to constitute good cause involving fault on the part of the employer to justify the Appellant's termination of employment, and the Appellant should not have been disqualified from receiving unemployment compensation benefits.

10

*Id.*

In situations where the underlying employment circumstances do *not* support a finding that an employee resigned with good cause involving fault on the part of the employer, this Court has not approved an award of unemployment compensation benefits. In *Private Industry Council v. Gatson*, 199 W.Va. 204, 483 S.E.2d 550 (1997), for instance, where an employer had justifiably terminated an employee's use of a company automobile, without other job responsibility or salary alterations, this Court found that a substantial change in the terms of employment had not occurred and "good cause involving fault on the part of the employer" had not been demonstrated. *Id.* at 205, 483 S.E.2d at 551. This Court concluded in *Private Industry Council* that "[w]e do not believe that respondent carried her burden of establishing that the car was part of her compensation package." *Id.* at 208, 483 S.E.2d at 554. Although the vehicle had been provided for both business and personal usage throughout most of the employee's tenure as executive director, this Court found that the employer was justified in discontinuing that usage and that such action did not constitute fault of the employer. *Id.*

Eligibility for unemployment compensation benefits was also denied in *Adkins v. Gatson*, 218 W.Va. 332, 624 S.E.2d 769 (2005). In that case, employees had voluntarily terminated their employment because they felt unsafe after another employee attacked a city councilman. Finding the absence of fault on the part of the employer because it had taken

11

reasonable measures to assure the safety of its employees, this Court denied unemployment compensation benefits. *Id.* at 339, 624 S.E.2d at 776. This Court held that the employees were "disqualified from receiving unemployment benefits because they left their employment without good cause involving fault on the part of their employer." *Id.* at 333, 624 S.E.2d at 770.

In examining unemployment compensation eligibility under West Virginia Code § 21A-6-3(1), this Court has emphasized that "[t]he types of circumstances justifying employee termination of employment in response to misrepresentations concerning the terms of employment or to substantial unilateral changes in the terms of the employment necessarily vary." *May*, 222 W.Va. at 377, 664 S.E.2d at 718. Further, in addressing the issue of precisely what employer action may constitute good cause involving fault on the part of the employer, this Court explained in *Childress* that the "unemployment compensation program is an insurance program, and not an entitlement program." *222* W.Va. at 587, 663 S.E.2d at 133. "[T]he basic policy and purpose of the Act is advanced both when benefits are denied to those . . . whom the Act is not intended to benefit, as well as when benefits are awarded in proper cases." *Id.*

Having reviewed extensive applicable precedent, this Court finds ample basis for distinguishing the present case from the cases in which particular employment alterations have been deemed substantial enough to constitute "good cause involving fault on the part

12

of the employer." W. Va. Code § 21A-6-3(1). Indeed, circumstances in which a finding of eligibility may be justified include employer actions which are "substantial unilateral changes in the terms of employment," as recognized in syllabus point two of *Murray*. 174 W.Va. at 424, 327 S.E.2d at 404. The situation in the present case, however, is factually distinct and includes determinative elements not present in *Murray* and its progeny. Specifically, the present case involves an employee who was clearly informed of the potential for alterations in working hours and who was provided with documents explaining that potential during the original employment process. Thus, the employer specified the parameters of employment and the potential for change even before employment began. Although this employee was initially hired into a position which permitted her to leave work by 5:00 p.m., the record is clear that she was also informed, through two separate written documents, that her working hours could be altered at any time. Moreover, negotiations had occurred between the employer and the Union representing the employee. The resulting collective bargaining agreement provided that there was no guaranteed work schedule and that the employer was authorized to alter working hours as business needs required. Importantly, unlike several other cases previously discussed, the employee in this case was offered additional compensation for the alteration in working hours.

Consequently, the analysis of the factual circumstances herein compels this Court to conclude that the element of "fault" on the part of the employer, a predominant factor in many of the cases outlined above, simply does not exist in the present case. This

13

emphasis on fault as a component of the statutory inquiry is not entirely unique to West Virginia. While different states utilize varying language, the principles underlying the eligibility determinations are strikingly similar. In Florida, for instance, the guiding statute uses the phrase "without good cause attributable" to the employer. Fla. Stat. § 443.101(1)(a) (1991). In *Brown v. Unemployment Appeals Commission*, 633 So.2d 36 (Fla. App. 5 Dist. 1994), the Florida District Court of Appeals explained that the statute "only protects workers of employers who *wrongfully cause* their employees to 'voluntarily' leave their employment." *Id.* at 38 (emphasis supplied). The court held that "[t]he burden below was on the claimant, Brown, to show that her voluntary departure from employment was attributable to the wrongful conduct of her employer." *Id.*

In another Florida decision, unemployment compensation benefits were denied to an employee who terminated her employment subsequent to an alteration in her working hours. Although the employee contended that the alteration rendered it impossible for her to find childcare for her children, the Florida District Court of Appeal concluded that the employee had not demonstrated that she quit for good cause *attributable* to her employer. *Beard v. State Dept. of Commerce*, 369 So.2d 382 (Fla. App. 1979). The court reviewed the history of the statutory standard and noted that the statute had previously required only "good cause" for termination of employment. *Id*. at 384. The legislature had subsequently added the phrase "attributable to the employer" in a 1963 amendment. *Id*. Thus, in adhering to the obvious intent of the legislature, the *Beard* court concluded that while "[a] mother's

14

unwillingness to leave her children in the care of others at night is certainly good cause for her to resign[,] . . .it is not good cause which can be attributed to her employer." *Id.* The court noted that "[w]e sympathize with [the employee's] position, but we must ascribe to words within a statute their ordinary meaning." *Id.*

Another example of the required nexus between good cause and the employer's action is discernable in the unemployment compensation eligibility structure of North Dakota, also premised upon a statute using the "good cause attributable to the employer" terminology. *See* N.D. Cent. Code § 52-06-02(1) (2011). The Supreme Court of North Dakota, in *In re Claim for Job Insurance Benefits*, 379 N.W.2d 281 (N.D. 1985), denied benefits to an employee who terminated her employment because work alterations had affected her childcare responsibilities. Recognizing the significance of the phrase "good cause attributable to the employer," the court reasoned as follows:

> We do not question that Sonterre may have been inconvenienced because the change in shift required her to find a baby-sitter. Such an inconvenience, however, does not empower an employee to leave employment and attribute the leaving to the fault of the employer. While parental obligations may be good personal reasons for leaving employment, they are not causes that are attributable to the employer.

*Id.* at 284.[4]

---

[4]The phrase "attributable to the employer," as used in various other state statutes, has been defined as "produced, caused, created or as a result of actions by the employer." *Newland v. Job Serv. N.D.*, 460 N.W.2d 118, 121 (N.D. 1990). Thus, a statutory scheme utilizing that phrase is arguably less stringent than the "fault" standard utilized in West

15

In that vein, the circuit court in the present case reasoned that Mrs. Epling was required to "show that she both left the job with 'good cause' and that there was 'fault on the part of the employer.'" While the circuit court was correct in asserting that both good cause and fault have to be demonstrated, it is also imperative to note that the statutory language does not simply list these two separate elements of the inquiry; rather, it links them in a significant and meaningful fashion. It requires good cause *involving* fault on the part of the employer. That required nexus was aptly illuminated in a comparison between the West Virginia statute at issue in this case and the New Mexico unemployment compensation statute. In *LeMon v. Employment Security Commission*, 555 P.2d 372 (N.M. 1976), the Supreme Court of New Mexico observed that while the New Mexico statute "does not use the words 'fault on the part of employer[,]' [it] is otherwise similar" to the West Virginia statute. 555 P.2d at 373. The New Mexico statute provides that the employee is disqualified from receiving benefits if he "left his employment voluntarily without good cause in connection with his employment." N.M. Stat. Ann. § 51-1-7 (2011). The New Mexico court explained that the principle encompassed within the two statutes "is the same[,]" observing as follows:

> Clearly, the "good cause" required by our statute refers to "in connection with his employment." The legislature could hardly have intended the employer's account to be charged for an employee's voluntary termination for merely personal reasons

Virginia and consequently more favorable toward a finding of employee eligibility.

16

no matter how "good." There must be a causal connection between the employment itself and the termination thereof to trigger the eligibility for benefits.

*Id.* at 374.

Having determined that the element of fault on the part of the employer has not been demonstrated in the present case, this Court concludes that Mrs. Epling terminated her employment voluntarily[5] without good cause involving fault on the part of the employer. Pursuant to the provisions of West Virginia Code § 21A-6-3(1), Mrs. Epling is consequently disqualified from receiving unemployment compensation benefits.

For the foregoing reasons, the decision of the Circuit Court of Kanawha

---

[5]In ruling on the issues raised in this case, the circuit court did not address Mrs. Epling's contention that her departure was not truly voluntary because her childcare issues necessitated the departure. Specifically, the circuit court order stated: "Because I find that Mrs. Epling left her job with good cause involving fault on the part of the employer, I need not address the Petitioner's [Mrs. Epling's] argument that she did not leave her employment voluntarily." Mrs. Epling initially admitted to the administrative law judge that she quit work "voluntarily" and also stated in her appeal to the circuit court that she quit voluntarily. The underlying Board of Review decision found that Mrs. Epling voluntarily left employment, and the circuit court did not disturb that portion of the Board of Review's opinion. As discussed above, this Court clearly articulated its applicable standard of review in *May*: the "legal conclusion that [an employee] quit her job 'voluntarily without good cause involving fault on the part of the employer' within the meaning of West Virginia Code § 21A–6–3(1) [2005] is subject to a *de novo* standard of review." 222 W.Va. at 376, 664 S.E.2d at 718. The evidence of record fully supports the conclusion of the Board of Review that Mrs. Epling voluntarily terminated her employment, and this Court is in agreement with that legal conclusion.

17

County is reversed, and this case is remanded for reinstatement of the decision of the Board

of Review finding Mrs. Epling ineligible for unemployment compensation benefits.


                                        Reversed and Remanded with Directions.

18