## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Aleesha D. Gray,**
**Petitioner Below, Petitioner**

**vs)   No. 16-0725** (Kanawha County 16-AA-24)

**Workforce West Virginia Board of Review, et al.,**
**Respondents Below, Respondents**

**FILED**

**August 25, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Aleesha D. Gray, pro se, appeals the June 30, 2016, order of the Circuit Court of Kanawha County affirming a March 23, 2016, order of Respondent Workforce West Virginia Board of Review ("Board") that disqualified petitioner from receiving unemployment benefits. The Board, by counsel Robert J. Smith, filed a summary response in support of the circuit court's order. Respondent West Virginia Regional Jail and Correctional Facility Authority ("Regional Jail Authority"), by counsel Celeste Webb-Barber, also filed a summary response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner worked for the Regional Jail Authority as an administrative services assistant in the human resources department from November 1, 2010, to January 4, 2016. Petitioner resigned from her employment because she was admitted into the Charleston Area Medical Center ("CAMC") nursing program following being a part-time student at BridgeValley Community and Technical College ("BridgeValley"). While a part-time student at BridgeValley, petitioner was able to maintain her full-time position with the Regional Jail Authority. However, after petitioner was admitted into the CAMC program, she became a full-time nursing student. Consequently, once petitioner received her class schedule in November of 2015, she discussed with the Regional Jail Authority whether she could be a part-time administrative services assistant. The Regional Jail Authority believed that petitioner could not perform her job as a part-time employee because petitioner's class schedule would prevent her from working consecutive days.

1

At a February 9, 2016, administrative hearing,[1] petitioner testified regarding the Regional Jail Authority's position that she could not perform her job if she was prevented from working full-time:

> . . . They felt that if I came in on like a Tuesday [following] a day off[,] they would spend more time with me trying to bring me up to speed versus me just coming in and working. They have accommodated me really honestly as well as they can. It just wasn't going to work.
>
> Now, if I had been a receptionist for them then yeah, possibly that would have worked, but because of the role that I led[,] it's just impossible to keep up. They admitted to that. You know, that it was a full-time assignment. It was not a part-time assignment.

Importantly, petitioner agreed with the Regional Jail Authority that she could not perform the duties of her position if she worked only part-time:

> . . . [I]t's a full-time job and, you know, I handle[d] 5 jails. Another lady handled the other 5[,] and plus I was the timekeeper for about 42 people making sure they're on the positive side of payroll.
>
> So, you know, it's a lot of work. It is a full-time job. *They are correct.* It's impossible for me to come in 2 days a week and try to be brought up to speed [as] to what's going on.

(Emphasis added.). Consequently, petitioner testified that she "decided [to] quit." The administrative law judge ("ALJ") asked petitioner whether her decision to quit was "voluntary." Petitioner answered "yes, sir."

By order entered on February 12, 2016, the administrative law judge ("ALJ") found that petitioner quit her job voluntarily and disqualified her from receiving unemployment benefits pursuant to West Virginia Code § 21A-6-3(1). Petitioner appealed to the Board, which adopted the ALJ's decision by order entered on March 23, 2016. Petitioner appealed that order to the Circuit Court of Kanawha County, which affirmed the Board's decision by order entered on June 30, 2016. Petitioner now appeals from the circuit court's June 30, 2016, order affirming the Board's March 23, 2016, order that disqualified her from receiving unemployment benefits pursuant to West Virginia Code § 21A-6-3(1).

West Virginia Code § 21A-6-3(1) provides as follows:

---

[1]The February 9, 2016, administrative hearing was scheduled because petitioner appealed the initial decision of the deputy commissioner, dated January 11, 2016, that she was disqualified from receiving unemployment benefits.

> [A]n individual is disqualified for benefits . . . (1) [f]or the week in which he or she left his or her most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least thirty working days.[2]

The "legal conclusion that [an employee] quit her job 'voluntarily without good cause involving fault on the part of the employer' within the meaning of West Virginia Code § 21A–6–3(1) . . . is subject to a *de novo* standard of review." *Verizon Services Corp. v. Epling*, 230 W.Va. 439, 443, 739 S.E.2d 290, 294 (2013) (per curiam) (quoting *May v. Chair and Members, Bd. of Review*, 222 W.Va. 373, 376, 664 S.E.2d 714, 718 (2008) (per curiam)). However, we defer to the Board's factual findings unless they are clearly erroneous. Syl. Pt. 1, *Childress v. Muzzle*, 222 W.Va. 129, 663 S.E.2d 583 (2008).

On appeal, petitioner advances three contentions which we find are belied by the transcript of the February 9, 2016, administrative hearing. First, petitioner argues that she was unfairly prejudiced by the Regional Jail Authority's failure to appear for the hearing because the Authority could have corroborated her allegation that it did not accommodate her need to work part-time once she was admitted into the CAMC nursing program. However, at the administrative hearing, the ALJ explained to petitioner that, because she testified that she quit her job voluntarily, she had the burden of establishing that she did so with good cause involving fault on the part of the employer. We find that the ALJ's explanation was in accord with our decision in *Verizon Services Corp.*, in which we reversed a circuit court ruling that the employee did make the required showing that she left her job with good cause and that the good cause involved fault on the part of her employer. 230 W.Va. at 446-48, 739 S.E.2d at 297-99.[3] Moreover, we agree with the Board's argument that neither party was required to be at the hearing. *See* 84 W.Va.C.S.R. § 1-6.2 (giving parties in a contested unemployment benefit case the right to a hearing, but omitting any requirement that they be present). Therefore, we reject petitioner's contention that she was unfairly prejudiced by the Regional Jail Authority's failure to appear for the February 9, 2016, hearing.

Second, petitioner contends that the Regional Jail Authority informed her that it would not oppose her application for unemployment benefits. The Regional Jail Authority counters that this contention is unsupported by the record. We agree with the Regional Jail Authority. We find that petitioner never raised this issue at the February 9, 2016, hearing. Consequently, there was no testimony by petitioner that the Regional Jail Authority informed her that it would not oppose her application for benefits. Moreover, though several documents were admitted into evidence at the

---

[2]The Legislature recently amended West Virginia Code § 21A-6-3(1), but did not change the language applicable to this case.

[3] We explained in *Verizon Services Corp.* that the purpose of the unemployment compensation fund is to protect "workers of employers who *wrongfully cause* their employees to voluntarily leave their employment." *Id.* W.Va. at 446, 739 S.E.2d at 297 (internal quotations and citations omitted; emphasis by the Court).

hearing, no document in the record substantiates petitioner's allegation that she was told that her application for unemployment benefits would go unopposed. Therefore, we conclude that this contention is without merit.

Finally, petitioner contends that, though she quit her job voluntarily, she did so with good cause because the Regional Jail Authority did not accommodate her need to work part-time once she was admitted into the CAMC nursing program. Respondents counter that the Board properly found that there was no good cause involving fault on the part of the Regional Jail Authority. We agree with respondents. Based on our independent review of the February 9, 2016, hearing transcript, we find that petitioner testified that the Regional Jail Authority was "correct" that she could not perform the job she had on a part-time basis. Petitioner agreed that it would be "impossible for [her] to come in 2 days a week and try to be brought up to speed [as] to what's going on." Simply put, petitioner acknowledged that it was "a full-time job" that she "decided [to] quit" so that she could complete her education to become a registered nurse. Therefore, we find that the Board properly found that petitioner quit her job voluntarily, without good cause involving fault on the part of the Regional Jail Authority, and disqualified her from receiving unemployment benefits pursuant to West Virginia Code § 21A-6-3(1).[4] Accordingly, we conclude that the circuit court properly affirmed the Board's March 23, 2016, order.

For the foregoing reasons, we affirm the circuit court's June 30, 2016, order upholding the Board's March 23, 2016, order.

Affirmed.

**ISSUED:** August 25, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[4]Respondents argue that West Virginia Code § 21A-6-3(9) also disqualifies petitioner from receiving unemployment benefits and, unlike West Virginia Code § 21A-6-3(1), directly addresses petitioner's situation. West Virginia Code § 21A-6-3(9) provides that "an individual is disqualified for benefits: . . . [f]or each week in which an individual is unemployed because, having voluntarily left employment to attend a school, college, university or other educational institution, he or she is attending that school, college, university or other educational institution[.]" However, having concluded that the Board properly disqualified petitioner from receiving unemployment benefits pursuant to West Virginia Code § 21A-6-3(1), we decline to address respondents' arguments regarding West Virginia Code § 21A-6-3(9) because it was not relied upon in the Board's decision.