# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Coleen D. Sabatino,**
**Petitioner Below, Petitioner**

**FILED**

**September 1, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)   No. 16-0769** (Kanawha County 15-AA-104)

**Steptoe & Johnson, PLLC,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Coleen D. Sabatino, pro se, appeals the July 18, 2016, order of the Circuit Court of Kanawha County affirming a July 27, 2015, order of the Board of Review of Workforce West Virginia that disqualified petitioner from receiving unemployment benefits. Respondent Steptoe & Johnson, PLLC, by counsel Larry J. Rector, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner worked as a legal secretary for respondent, a law firm, in its Bridgeport, West Virginia, office from December 1, 2014, until March 18, 2015. From her first day of employment, petitioner was dissatisfied with her treatment by respondent. Petitioner states that her orientation was deficient in that respondent's office manager failed to give her a tour of the office, failed to tell her where the restroom was, and failed to show her the location of the offices of the attorney and the paralegal for whom she would be working.

Petitioner also complains that respondent placed her on a performance improvement plan ("PIP") for insufficient justification in February of 2015.[1] Shortly thereafter, petitioner was

---

[1] Petitioner's PIP addressed issues of performance, organization, and attendance, and she was to be evaluated after an original period of thirty days which was later extended twice. When petitioner applied for unemployment benefits on April 20, 2015, she admitted to absenteeism, (Continued . . .)

1

hospitalized for an illness from February 17, 2015, to February 20, 2015.[2] Following her hospitalization, work restrictions required petitioner to be placed on light duty and her work release noted that she "may be abnormally fatigued for up to three weeks related to [her] current condition." Respondent believed that petitioner's position was already light duty; however, respondent extended petitioner's PIP twice "in fairness to [her]" given the time petitioner missed because of her hospitalization.

Finally, petitioner alleges that the paralegal for whom she worked did not cooperate in helping to get petitioner's work done and that the coworkers with whom she shared an office were a distraction to her because they did not concentrate on their jobs and disseminated "falsehoods and sophomoric details" about her to the office manager. Consequently, by letter dated March 15, 2015, petitioner requested a reassignment to another paralegal and to be moved to another office space. Respondent denied petitioner's requests by letter dated March 17, 2015. Respondent first stated that petitioner's assigned paralegal behaved professionally toward petitioner and gave petitioner "every benefit of doubt" when asked about the quality of petitioner's work. Respondent concluded that petitioner needed to communicate better with the paralegal instead of being assigned to another paralegal. With regard to the behavior of respondent's coworkers, respondent found that she did not raise that issue until her March 15, 2015, letter and that "[a]ll secretaries in the office work in the same environment" as petitioner. However, for reasons apparently not related to this case, respondent relocated one coworker petitioner complained of to another office.

Respondent's March 17, 2015, letter also extended petitioner's PIP until March 27, 2015, "at which time a decision will be made about [petitioner's] future employment with [respondent]." The following day, March 18, 2015, petitioner cleaned out her desk and left a letter on her desk, stating that she was resigning from her position "effective immediately."

Petitioner applied for unemployment benefits on April 20, 2015, stating that she quit her job because she felt that "[she] was going to be fired" and did not want the termination to show on her employment history. Petitioner stated that she attempted to "resolve the situation" with her job difficulties and to do her job to the best of her ability. Though petitioner admitted to absenteeism, she attributed it "to health reasons beyond [her] control." Petitioner further stated that she was "able, available[,] and seeking full-time work." By a decision dated April 29, 2015, a deputy commissioner of Workforce West Virginia denied petitioner's application for benefits on the ground that she quit work voluntarily without good cause involving fault on the part of respondent.

Petitioner appealed the deputy commissioner's decision, and an administrative hearing was held on May 29, 2015. The administrative law judge ("ALJ") admitted petitioner's April 20, 2015, statement; an April 22, 2015, request for separation information filled out by respondent; and the deputy commissioner's April 29, 2015, decision as exhibits. Petitioner requested the admission

which she attributed "to health reasons beyond [her] control."

[2]The record does not disclose the exact nature of petitioner's illness.

into evidence of the work release completed by a physician's assistant following her hospitalization, which the ALJ granted. Respondent sought the admission of (1) the March 15, 2015, letter, in which petitioner requested a reassignment to another paralegal and to be moved to another office; (2) the March 17, 2015, letter, in which respondent denied those requests; (3) the March 18, 2015, letter in which petitioner resigned "effective immediately"; (4) a March 23, 2015, letter from petitioner to respondent, in which she took issue with the statements contained in respondent's March 17, 2015, letter; and (5) a timeline of petitioner's employment prepared by respondent. The ALJ admitted both the letters and the timeline.[3]

In addition to the documentary evidence, petitioner and respondent's director of employee relations testified at the May 29, 2015 hearing. At the beginning of her testimony, petitioner appeared hesitant and also noted that the hearing had been scheduled only for thirty minutes. The ALJ advised petitioner that, regardless of how long the hearing was scheduled to last, he would "take as much time as necessary for [her] to have a full, fair hearing." Thereafter, the ALJ repeatedly asked petitioner whether she felt limited in how long she had to testify. During one of those exchanges, the ALJ reassured petitioner that he wanted her to tell him everything that she felt was important for him "to make a fair decision regardless of how long it [took her]." Also, following the admission of the timeline of petitioner's employment prepared by respondent, the ALJ allowed petitioner to testify as to what she felt were inaccuracies in that exhibit.

During petitioner's testimony, she confirmed that (1) from the day she started working for respondent, she "felt that [she] was not given a fair shot"; (2) respondent granted two extensions of her PIP because of her hospitalization; and (3) she and her coworkers had a lot of "personal conflict." The ALJ asked petitioner whether she felt that she resigned or was terminated. Petitioner answered, "I quit." The ALJ inquired whether petitioner quit "voluntarily." Petitioner responded, "I did." However, petitioner further testified that, if she did not quit her job, she believed that respondent would have fired her. Consequently, the ALJ asked petitioner whether "any supervisor or manager [told her that she was] going to be discharged." Petitioner stated that no one told her that she was going to be terminated, but that she was left with the impression that respondent wanted to fire her. However, petitioner admitted that the last extension of her PIP occurred on March 17, 2015, the day before she quit.

---

[3]Petitioner objected to the admission of respondent's timeline and the April 22, 2015, request for separation information filled out by respondent on the ground that each contained inaccuracies. The ALJ ruled that such an objection went to the weight that each document should be given, rather than its admissibility. On appeal, petitioner argues that the ALJ failed to follow the West Virginia Rules of Evidence in his rulings. However, 84 W.Va.C.S.R. § 1-6.3 provides that those rules are generally not applicable to administrative hearings in contested unemployment benefit cases. Upon review of the transcript of the May 29, 2015, hearing, we find that the ALJ did not abuse his discretion in admitting all exhibits offered by the parties. *See Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 63, 479 S.E.2d 561, 573 (1996) (stating that evidentiary rulings are reviewed only for abuse of discretion).

Respondent's employee relations director testified that, because petitioner worked for only one attorney (who also had a legal secretary at his other office) and one paralegal, she had a light workload in comparison to other legal secretaries employed by respondent. The employee relations director further testified that petitioner's PIP addressed issues of performance, organization, and attendance. However, the ALJ limited the testimony of the employee relations director regarding petitioner's level of compliance with her PIP because the parties agreed that petitioner voluntarily quit her job (instead of being terminated by respondent) and because petitioner never testified that the issues that she had with respondent and her coworkers involved discrimination against her based on status such as gender or age.[4]

In a decision dated June 1, 2015, the ALJ noted petitioner's personal problems with her coworkers and her assigned paralegal, and the statement contained in her work release stating that, following her hospitalization, she could become "abnormally fatigued." The ALJ specifically addressed petitioner's health by finding that, if she felt "abnormally fatigued" or overwhelmed, she never raised that concern with respondent. The ALJ further found that petitioner had a light workload for a legal secretary because petitioner worked for only one attorney (who also had a legal secretary at his other office) and one paralegal. With regard to petitioner's contention that she quit her job in anticipation of being terminated, the ALJ found that "the evidence supports a finding that [respondent] did not desire to discharge [petitioner]" because respondent extended petitioner's PIP "on two separate occasions." Accordingly, the ALJ concluded that petitioner was disqualified from receiving unemployment benefits, pursuant to West Virginia Code § 21A-6-3(1) because she quit work voluntarily, without good cause involving fault on the part of respondent, by "[leaving] a written resignation on her desk on March 18, 2015."

Petitioner appealed the ALJ's June 1, 2015, decision to the Board of Review of Workforce West Virginia ("Board"). On June 21, 2015, petitioner filed a motion with the Board requesting a remand for an additional hearing with a different ALJ because she was "cut off" at the May 29, 2015, hearing before she could present necessary evidence. By order entered on July 27, 2015, the Board adopted the ALJ's decision in its entirety and denied petitioner's motion because she failed to show good cause for a remand. Petitioner appealed that order to the Circuit Court of Kanawha County, which affirmed the Board's decision by order entered on July 18, 2016. The circuit court determined that the ALJ properly found that petitioner quit her job voluntarily without good cause involving fault on the part of respondent and that the Board properly denied petitioner's request for a remand because there was no good cause shown. Petitioner now appeals from the circuit court's July 18, 2016, order affirming the Board's July 27, 2015, order that disqualified her from receiving unemployment benefits.

In syllabus point 1 of *Childress v. Muzzle*, 222 W.Va. 129, 663 S.E.2d 583 (2008),we held as follows:

---

[4]Petitioner states that she was forty-eight years old at the time of her employment with respondent.

"The findings of fact of the Board of Review of [Workforce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*." Syllabus Point 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994).

Though the West Virginia Unemployment Compensation Law, West Virginia Code §§ 21A-1-1 to 21A-11-1, is liberally construed as remedial legislation, the purpose of the unemployment compensation fund is to protect "workers of employers who *wrongfully cause* their employees to voluntarily leave their employment." *Verizon Services Corp. v. Epling*, 230 W.Va. 439, 446, 739 S.E.2d 290, 297 (2013) (per curiam) (internal quotations and citations omitted; emphasis by the Court).[5] West Virginia Code § 21A-6-3(1) provides as follows:

[A]n individual is disqualified for benefits . . . (1) [f]or the week in which he or she left his or her most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least thirty working days.[6]

Initially, we address the standards of review that are applicable to this case. First, the parties dispute whether the question of good cause for an employee's decision to quit employment constitutes a question of law, subject to de novo review, or a question of fact on which the Board's determination is entitled to deference. In *Adkins*, we found that whether a school employee was entitled to benefits for her summer unemployment pursuant to West Virginia Code § 21A-6-15(2)(b) constituted a question of statutory interpretation, which we reviewed de novo. 192 W.Va. at 566, 453 S.E.2d at 400. More recently, with regard to the statute at issue in this case, we have similarly determined that the "legal conclusion that [an employee] quit her job 'voluntarily without good cause involving fault on the part of the employer' within the meaning of West Virginia Code § 21A-6-3(1) . . . is subject to a *de novo* standard of review." *Verizon Services Corp.* 230 W.Va. at 443, 739 S.E.2d at 294 (quoting *May v. Chair and Members, Bd. of Review*, 222 W.Va. 373, 376, 664 S.E.2d 714, 718 (2008) (per curiam)). Therefore, we agree with petitioner that we review de novo whether her decision to quit was without good cause involving fault on the part of respondent.

Second, petitioner contends that the Board erred in denying her motion to remand the case for an additional hearing because the ALJ stifled her presentation of evidence at the May 29, 2015,

[5]As we explained in *Childress*, because the unemployment compensation fund constitutes an insurance program—not an entitlement program—its purpose "is advanced both when benefits are denied to those for whom the Act is not intended to benefit, as well as when benefits are awarded in proper cases." 222 W.Va. at 133, 663 S.E.2d at 587.

[6]The Legislature recently amended West Virginia Code § 21A-6-3(1) but did not change the language applicable to this case.

administrative hearing. We review the Board's decision that good cause was not shown for an additional hearing only for an abuse of discretion. *See* Syl. Pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995) (finding that procedural rulings are reviewed for abuse of discretion).[7]

The May 29, 2015, hearing transcript contradicts petitioner's claim that the ALJ stifled her presentation of evidence. We find that this case is analogous to *Denney v. Rutledge*, 174 W.Va. 820, 822, 329 S.E.2d 893, 895-96 (1985) (per curiam), in which we rejected the employee's contention that the ALJ failed to make a proper inquiry into the facts of her case because the record reflected that a hearing was held, during which the employee and the employer presented evidence. First, petitioner—not the ALJ—raised the issue of the hearing being scheduled only for thirty minutes. The ALJ repeatedly assured petitioner that he would "take as much time as necessary for [her] to have a full, fair hearing" and wanted her to tell him everything that she felt was important for him "to make a fair decision regardless of how long it [took her]." Second, though petitioner alleges that the ALJ did not inquire into the reasons for her belief that she would be fired if she did not quit, the ALJ asked her numerous questions regarding her decision to leave her employment and she testified that she felt that respondent never gave her "a fair shot" and that she and her coworkers had a lot of "personal conflict." Therefore, the transcript reflects that petitioner was allowed to provide the testimony that is the basis for her claim that she voluntarily quit her job for good cause involving fault on the part of respondent. Accordingly, we conclude that the Board did not abuse its discretion in denying petitioner's motion for a remand for an additional hearing.[8]

We now address whether petitioner had good cause to quit her job because of fault on the part of respondent. Petitioner contends that any reasonable person would have quit petitioner's job given the issues that she had with respondent and her coworkers, and that her case is analogous to *Curry v. Gatson*, 180 W.Va. 272, 376 S.E.2d 166 (1988). We found in *Curry* that the employee acted reasonably in quitting a job where she was subjected to racial discrimination. *Id.* at 275, 376 S.E.2d at 169. Therefore, we find that the instant case is distinguishable from *Curry* because the ALJ found that the issues that petitioner had with respondent and her coworkers were not discriminatory in nature, which is a finding she does not dispute.

---

[7]We decided *McDougal* under the West Virginia Rules of Civil Procedure and the West Virginia Rules of Evidence, which do not apply in the hearing process pursuant to 84 W.Va.C.S.R. § 1-6.3. However, we find that the standard of review for procedural rulings in such cases is the same given the need for the hearing process to be conducted "expeditiously" pursuant to 84 W.Va.C.S.R. § 1-2.2. *See McDougal*,193 W.Va. at 235, 455 S.E.2d at 794 (finding that procedural rulings "must be made quickly, without unnecessary fear of reversal, and must be individualized to respond to the specific facts of each case").

[8]We further reject petitioner's contention that the Board made insufficient findings with regard to her motion and find that the determination of no good cause shown was sufficient given the adequacy of the May 29, 2015, hearing.

With regard to petitioner's health, she alleges that, while being a legal secretary may not include much physical exertion, it can be mentally exhausting. However, the ALJ found that petitioner had a light workload for a legal secretary because she worked for only one attorney (who also had a legal secretary at his other office) and one paralegal. We agree with the ALJ. Stress is common within any law firm that imposes deadlines for its employees to meet. Therefore, we find that petitioner's case is analogous to *Denney*, in which an employee of a mental health facility became tired of hearing other employees scream at patients in apparent attempts to control them. 174 W.Va. at 821, 329 S.E.2d at 894-95. In *Denney*, we found that "there is no indication that the conditions in the hospital differed from conditions customarily present in such a hospital" and concluded that the employee was properly disqualified from receiving unemployment benefits pursuant to West Virginia Code § 21A-6-3(1) because she voluntarily quit her job. *Denney*, 174 W.Va. at 822, 329 S.E.2d at 895-96. In the instant case, the record contains no indication that the legal secretary position in which petitioner was employed by respondent was any different than such a position with any other law firm. Moreover, according to petitioner's April 20, 2015, statement, she was "able, available[,] and seeking full-time work" regardless of any health issue. Accordingly, we find that the Board properly found that petitioner quit her job voluntarily, without good cause involving fault on the part of respondent, and disqualified her from receiving unemployment benefits pursuant to West Virginia Code § 21A-6-3(1).

For the foregoing reasons, we affirm the circuit court's July 18, 2016, order upholding the Board's July 27, 2015, order.

Affirmed.

**ISSUED:**   September 1, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

7